### DICKINSON, AUDITOR, *v.* PAGE.

Opinion delivered October 18, 1915.

1. LEGISLATIVE ACTS—GOVERNOR'S VETO—APPROPRIATIONS—VETO OF SINGLE ITEM.—The provision of Art. 6, Sec. 15, Const. of 1874, in the matter of the veto of a legislative act by the Governor, and requiring the filing of objections with the bill and the giving notice thereof by public proclamation, is applicable to and to be complied with in the disapproval of a distinct item of appropriation in an appropriation bill, and *held* the action of the Governor in writing "disapproved and vetoed" across the face of an item of appropriation, and signing the bill after the notation "approved, except as to the above items disapproved and vetoed," and filing the same in the Secretary of State's office, is a substantial compliance with the Constitution. The filing of the bill with said notation written across the face of the item disapproved was a sufficient statement by the Governor of his objections thereto, and there is no requirement that the objections shall be written separately or upon a different instrument.

2.    LEGISLATIVE ACT—APPROPRIATION—VETO OF CERTAIN ITEM—PROCLA-
MATION.—Art. 6, Secs. 15-17, Const. 1874, provides that notice of
the Governor's veto of any legislative enactment shall be given by
proclamation. *Held* when a bill is returned by the Governor to the
Secretary of State, where it was accessible and open to inspection by
the public, with the Governor's signature, showing that the bill
was approved, "except as to the items above disapproved and
vetoed," such items being marked "disapproved and vetoed," that
the veto or disapproval was effectual, and the items so disapproved
were void.

Appeal from Pulaski Circuit Court, Third Division;
*G. W. Hendricks,* Judge; reversed.

*Wallace Davis,* Attorney General, and *Walter J.
Terry,* Special Counsel, for appellant.

The disapproval of the "Item No. 10—For Postage
and Express, $2,000," was in compliance with the re-
quirements of the State Constitution, and prevented it
from becoming a valid appropriation.

The method of vetoing *in toto* the general bills re-
ferred to in section 15, article 6 of the Constitution differs
entirely from the method of disapproving or vetoing an
*item or items* of a bill making appropriations of money,
embracing distinct items, referred to in section 17 of the
same article. The former section relates to every bill
and contemplates that the Governor shall approve or dis-
approve such bills in their entirety. The latter section
not only does not refer to every bill, but does not even
embrace *all appropriation* bills, but only such appropria-
tion bills as embrace *distinct items.*

It is conceded that the Constitution must be consid-
ered as a whole, 93 Ark. 228; and that each part must be
viewed in the light of other provisions relating to the
same subject, 107 Ark. 272; but this does not mean that
the court is at liberty to read into one section of the Con-
stitution the language or words that appear in another—
but which are excluded from the particular section—
merely because the two sections relate more or less to the
same subject. This would be to destroy the differences
and distinctions which the framers of the Constitution, by
the very fact of employing different language, meant

should obtain, besides doing violence to that rule of construction which requires that the law shall be so construed as to give effect and meaning to every part thereof. 24 Ark. 286, 288.

While section 17 expressly provides that the bill vetoed can only be repassed according to the rules and limitations prescribed for the *passage of other bills,* it does not say that an item of an appropriation bill can only be disapproved according to the rules and limitations prescribed for *vetoing other bills.*

Pursuant to section 20, article 6, the Secretary of State has a record of the Governor's actions with reference to this bill, and by this record so preserved the status of the bill is as clearly outlined and as easy of ascertainment as it could possibly be had the Governor's disapproval been evidence in the manner contended for by counsel for appellee.

*Mehaffy, Reid & Mehaffy* and *Hal Norwood* for appellee.

The disapproval of the appropriation is invalid because the Governor did not file in the office of the Secretary of State his objections to the item he attempted to veto; and because he did not give notice thereof by public proclamation.

Sections 15 and 17 of Article 6 of the Constitution relate to the same subject and must be read together. 107 Ark. 272; 97 Ark. 228. Unless they are read together, we have no constitutional direction as to the manner of disapproving an item of a bill. The only object in incorporating section 17 into the Constitution was merely to permit an item of an appropriation bill to be disapproved without disapproving the entire bill. It was not the intention that this section should be read independently of section 15, which prescribes the method that must be pursued to preserve a record of the Governor's action.

The provisions of the Constitution must be so interpreted as to avoid absurdity, and it has repeatedly been held that it should be construed according to the sense

of the terms used and the intention of its framers. It is not reasonable to suppose that it was the intention to require the Governor, before his disapproval of some unimportant bill could be effective, to give his reason for disapproving it and give notice thereof by public proclamation, and yet permit him to disapprove important items of an appropriation bill without stating his objections and without giving public notice of his action. 104 Ark. 583; 9 Ark. 270; 26 Ark. 281; 60 Ark. 343; 107 Ark. 272.

Touching the jealously and distrust with which the framers of our government and other constitutional governments have always regarded the veto power, and the careful limitations with which they have surrounded it, see 8 Words & Phrases, 7311, tit. veto.

The Constitution means something when it says that the Governor cannot disapprove a bill without giving his objections. It was not intended that he should exercise so great a power without giving a reason for it. When the two sections relating to this subject of the Governor's veto are read together, it is clear that the same formality is required to disapprove an item of a bill as to disapprove an entire bill. 106 Ark. 56; 27 Ark. 287.

In determining whether the Governor in his attempt to disapprove this item of the appropriation has complied with the Constitution, the court may, if necessary, look to the files of the office of Secretary of State. 40 Ark. 200; 90 Ark. 174; 76 Ark. 303; 83 Ark. 448.

These records show that the Governor's predecessors placed the same construction upon the Constitution for which appellee contends. 6 R. C. L. 60.

If the last clause of Section 15, Art. 6, applies where an item of a bill is disapproved, then it must be conceded that those requirements are mandatory. 105 Ark. 389; 27 Ark. 266; 90 Ark. 174; 71 Ark. 527; 72 Ark. 565; *Id.* 241. See also 64 S. E. 848; 77 S. E. 264.

KIRBY, J. This appeal challenges the validity of the veto of the Governor of certain separate items in Act No.

277 of the General Assembly of 1915, appropriating funds for the maintenance of the office of Commissioner of Mines, Manufactures and Agriculture. The bill as passed contained the following:

"Item No. 10. For postage and express $2,000."

The bill, including said item was presented to the Governor for his approval on March 18, 1915, seven days after the adjournment of the General Assembly, and on March 25, 1915, the Governor disapproved said item, writing across it the words, "Vetoed and disapproved" and on the same day the bill was signed by the Governor, following the notation "Approved, except as to the items above vetoed and disapproved."

The bill as signed was on the 27th day of March, 1915, filed in the office of the Secretary of State.

It is contended for appellant that the action of the Governor in disapproving the separate items appropriated in the act, met the constitutional requirements and that the bill as signed, became the law, excluding the items of appropriation disapproved, which became void.

The appellee, on the other hand contends that the attempted disapproval and veto of the distinct item of appropriation was ineffectual because of the alleged failure of the Governor to file the bill with his objections in the office of the Secretary of State and give notice thereof by public proclamation within twenty days after the adjournment of the General Assembly.

Article 6, sections 15 and 17 of the present Constitution of 1874, provide the procedure required for the approval and disapproval by the Governor of bills passed by the General Assembly.

Section 15 requires every bill passed by the General Assembly "shall be presented to the Governor and if he approve it, he shall sign it, but if he shall not approve it, he shall return it with his objections to the House in which it originated" for reconsideration there, provides for the passage of the bill over his objections and further as follows: "If any bill shall not be returned

by the Governor within five days, Sunday excepted, after it shall have been presented to him, the same shall be a law in like manner as if he had signed it; unless the General Assembly, by their adjournment, prevent its return; in which case it shall become a law, unless he shall file the same, with his objections, in the office of the Secretary of State, and give notice thereof, by public proclamation, within twenty days after such adjournment.''

"Section 17.  The Governor shall have power to disapprove any item or items, of any bill making appropriation of money, embracing distinct items; and the part or parts of the bill approved shall be the law; and the item or items of appropriation disapproved shall be void unless repassed according to the rules and limitations prescribed for the passage of other bills over the executive veto.''

The said section 17 gives the Governor power to disapprove any item or items of any bill making appropriation of money, embracing distinct items, and declares that the part or parts of the bill approved shall be the law and the item or items of appropriation disapproved shall be void unless repassed according to the rules and limitations prescribed for the passage of other bills over the executive veto; while by section 15 every bill presented to the Governor after the adjournment of the General Assembly becomes a law whether approved and signed by the Governor or not, "unless he shall file the same with his objections in the office of the Secretary of State and give notice by public proclamation within twenty days after such adjournment.''

There is a wide difference, in the opinion of the writer, between the provisions of the Constitution relative to the disapproval of a bill and the disapproval of a distinct item in an appropriation bill.  In the first instance the Governor must take the affirmative action prescribed to prevent the bill becoming a law, while in the latter the part of the bill approved becomes the law and the item of appropriation disapproved is void unless

repassed by the Legislature. There is no provision in said section 17 which authorizes the Governor to disapprove a distinct item in an appropriation bill, requiring him to file his objections with the bill in the office of the Secretary of State and give notice thereof by public proclamation. The provision herein, merely because the Legislature was adjourned and there could be no repassing of the disapproved item over the Governor's veto, does not require that in order to make effectual the disapproval of any such item of the bill that the Governor shall follow the procedure laid down in said section for the veto of bills. In other words, the writer is of the opinion, that the Governor is authorized by said section 17, to disapprove any item or items of an appropriation bill embracing distinct items, thereby rendering them void, and that only that part of the bill approved becomes the law, excluding from it necessarily, the items disapproved, and this without any further action taken by him whatever.

(1) The majority of the court, however, is of the opinion, that the provisions of said section 15 of the Constitution requiring the filing of objections with the bill and the giving notice thereof by public proclamation are applicable and to be complied with in the disapproval of a distinct item of appropriation in an appropriation bill, and also that the Governor's action in writing "disapproved and vetoed" across the face of the said item of appropriation, and signing the bill after the notation "approved, except as to the above items disapproved and vetoed" and filing the same in the Secretary of State's office, was a substantial compliance therewith. The filing of the bill with said notation written across the face of the item disapproved was a sufficient statement of his objections thereto and there is no requirement that the objections shall be written separately or upon a different instrument.

Now as to the giving of notice by public proclamation. The word "proclamation" is to be given its usual and ordinary meaning, it not having been apparently used

otherwise. It is defined by the New Standard Dictionary (Funk & Wagnalls) as follows: "(1) The act of proclaiming or publishing. (2) That which is proclaimed or published, especially by authority; any announcement made in a public manner. (3) Law. (a) 'An official public notification by some executive authority of the occurrence of an event important to the public, or of command, caution, or warning in relation to a matter impending, as, a proclamation of peace. (b) An announcement made by a ministerial officer of a court of something to be done, as that court is about to open or adjourn, or a prisoner to be discharged. (4) A formal declaration; an avowal." See also Webster's Dictionary.

In *Lapeyre* v. *United States,* 17 Wall. 191, a proclamation of the President relieving certain persons from penalties and removing all restrictions from commerce and trade in certain sections of the United States, executed or made on June 24, 1865, but not published in the newspapers until the 27th of June, nor published or promulgated anywhere or in any form before the 27th, "unless its being sealed with the seal of the United States in the Department of State was a publication or promulgation thereof" was held valid and effectual and published as the day of its date.

In *Wolsey* v. *Chapman,* 101 U. S. 755-768, the language of the act under consideration was "Any public land, except such as is or may be reserved from sale by any law of Congress or proclamation of the President of the United States" and the court held an order sent by the head of one of the executive departments to the commissioner of the general land office directing it, effectual to reserve the land from sale as a proclamation of the President saying: "A proclamation by the President reserving lands from sale is his official public announcement of an order to that effect. No particular form of such announcement is necessary. It is sufficient if it has such publicity as accomplished the end to be obtained. If the President himself had signed the order

in this case, and sent it to the registers and receivers who were to act under it, as notice to them of what they were to do in respect to the sales of the public lands, we can not doubt that the lands would have been reserved by proclamation within the meaning of the statute. Such being the case, it follows necessarily from the decision in *Wilcox* v. *Jackson* that such an order sent out from the appropriate executive department in the regular course of business is the legal equivalent of the President's own order to the same effect. It was, therefore, as we think, such a proclamation by the President reserving the lands from sale as was contemplated by the act."

This language was approved in *Wood* v. *Beach,* 156 U. S. 550. A verbal announcement by the circuit clerk was held the proclamation of the result of an election in *Mackin* v. *State,* 62 Md. 244, and the posting of a notice of meeting on the door of the council chamber and sending a copy thereof by mail to the members of the council by the mayor, a compliance with the statute authorizing the mayor to convene the council in special session by proclamation in *Cushing* v. *Hartwig,* 120 S. W. (Mo.) 109.

(2) No particular form of proclamation is prescribed or indicated by the Constitution, but only that "notice thereof be given by public proclamation" and from the authorities it appears that a proclamation is public when made and sufficient if it has such publicity, as accomplishes the end to be attained. Here the bill was returned with his objections by the Governor to the office of the Secretary of State where it was accessible and open to inspection of the public with his signature showing that the bill was "approved, except as to the items disapproved and vetoed." The Secretary of State, the officer required by law to publish the acts and resolutions of the General Assembly was thus informed that the distinct items of appropriation across which had been written "disapproved and vetoed" were void and not to be included in the publication of the law approved. The public notice by the proper officer was therefore sufficient to accomplish the end to be attained and the

constitutional requirements were substantially complied with.

It follows that the veto or disapproval was effectual and the items so disapproved void. The court therefore erred in sustaining the demurrer to the answer, and its judgment is reversed and the cause remanded with instructions to overrule it.

SMITH, J. (dissenting). This case has been decided upon a question which was not raised or discussed in the briefs. It was argued by counsel for appellant that the method of vetoing, *in toto,* the bills referred to in section 15, Article 6, of the Constitution is entirely distinct and different from the method of disapproving, or vetoing, an item or items of a bill making appropriations of money, referred to in section 17 of article 6. It was contended that section 17 conferred the right of vetoing items of an appropriation bill, without defining how that right was to be exercised, and that the provisions of section 15 could not be looked to for directions on that subject, because that section related to the approval or disapproval of bills *in toto;* and that therefore, the provisions of section 15, requiring notice of the disapproval of a bill to be given by public proclamation did not apply, when the veto power had been exercised as to items of an appropriation bill.

It was not contended that the provisions of section 15 had been complied with. It was not urged that any proclamation had issued. It was only insisted, but very earnestly insisted, that no proclamation was necessary, under the circumstances of this case. This view was accepted by the member of the court, who wrote the opinion for the majority, and it occurs to us that this was the real question in the case.

Upon the question of the necessity for a proclamation our views accord with those of the majority of the court. Section 15 of article 6 provides that when the Governor approves a bill he shall sign it. This signature is made the evidence of executive approval. If

he disapproves a bill, while the Legislature is in session, he returns it with his objections to the House in which it originated. If the General Assembly by their adjournment prevent the return of the bill, and it does not meet with the approval of the Governor, he is required to file it, with his objections, in the office of the Secretary of State, and give notice thereof by public proclamation. The objections of the Governor are required to be filed with the bill, and his proclamation is issued as evidence of his disapproval. When these provisions have been complied with, the record is made which furnishes the evidence of the action of the Governor, and unless these provisions are complied with there is no such record as the Constitution contemplated should be made to evidence the executive action.

It is not denied that if the Governor should disapprove a bill after the adjournment of the Legislature, he would have to give notice by public proclamation. This would be true even though the bill were an appropriation bill, which consisted of a single item. Then why should not a proclamation be necessary if one or more of several items were disapproved? There appears to be reason for this formality in the one case, which is not equally applicable to the other.

We think the purpose of section 17 was to confer upon the Governor the power to disapprove any particular item or items of an appropriation bill, without rendering other parts thereof void, but this power, of course, should be exercised in the manner provided by the Constitution for approving or disapproving bills, and section 15 must be looked to for these directions. If this be true, then it must necessarily follow that where the General Assembly by its adjournment has prevented the return of the bill to the House in which it originated, the Governor must file the bill, with his objections, in the office of the Secretary of State and give notice by public proclamation, if he wishes to veto some item of it. Was a proclamation made? The majority has answered in the affirmative. But we submit this is *ipse dixit.*

Cases cited in the majority opinion give no support to the view that the notation made by the Governor on the bill is a proclamation, and after a somewhat diligent search of the authorities we have failed to find any case supporting that holding. Cases cited in the majority opinion deal with the question of the promulgation of proclamations. We have no such question here. We insist that the Governor made no proclamation and, therefore, none could have been promulgated.

Section 15 deals with a subject of the highest importance and its provisions are necessarily mandatory. The framers of the Constitution had some purpose in mind in requiring the Governor to give notice by public proclamation. In this manner the Governor is allowed *pro tanto* to set aside the legislative will. The wisdom of according this right to the chief executive has been much debated in the making of Constitutions, and the right is one which has not always been granted. And it is universally held that it is a right which, when granted, must be exercised within the time, and in the manner, provided by the instrument granting it. It is not a right to be lightly exercised, but when exercised there should be no doubt of that fact. A record should be made, and that record is the one the Constitution provides to preserve the evidence of its exercise, which under our Constitution is a public proclamation.

Here the Governor wrote across the item under consideration the words "Vetoed and disapproved," and a similar notation was made across the face of other items. If there was a proclamation this notation constitutes it, and it occurs to us that the statement of the proposition carries its own refutation. The Governor does not sign a bill or write anything on it for the purpose of disapproving it. The Constitution provides that if he approve a bill he shall sign it, but if he disapprove the bill, or any portion of it, he does not evidence that disapproval by marginal notations. He must make the record which the Constitution requires, *i. e.*, a procla-

mation. *Arkansas State Fair Assn.* v. *Hodges,* 120 Ark. 131, 178 S. W. 939.

Believing that this notation on the bill, for the making of which the Constitution contains no authority, is insufficient to meet the requirement that there be a public proclamation, and, believing that this notation would never be recognized as a proclamation, in the absence of that label placed on it by the majority, we dissent from that holding.

Justice HART concurs.