Martín O. de la Rosa, peticionario, *v.* Blanton Winship, Gobernador de Puerto Rico, y E. Garrido Morales, Comisionado de Sanidad, demandados.

No. 296.—*Sometido:* Julio 20, 1934.** *Resuelto:* Julio 26, 1934.

* Nota: Véase el prefacio.
** Nota: Vista sobre procedencia del recurso.

*Guerra Mondragón & Soldevila,* abogados del peticionario; *Hon. Procurador General Benjamin J. Horton* y *T. Torres Pérez, Subprocurador,* abogados de los demandados.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

■ ■ El peticionario, en su primera causa de acción, ataca la facultad del Gobernador para reducir una partida en un proyecto de presupuesto en armonía con la autoridad conferídale por el artículo 34 de la Carta Orgánica. La parte pertinente de dicho artículo lee en inglés y en español como sigue:

". . . If any bill presented to the governor contains several items of appropriation of money, he may object to one or more of such items, or any part or parts, portion or portions thereof, while approving of the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items, parts or portions thereof to which he objects, and the appropriation so objected to shall not take effect."

". . . Si cualquier proyecto de ley presentado al Gobernador contuviere varias partidas de dinero, podrá él hacer objeciones a una o más de dichas partidas, o a cualquiera parte o partes, porción o porciones de las mismas, no obstante aprobar la otra porción del proyecto. En tal caso él agregará al proyecto de ley, en el momento de firmarlo, una relación de las partidas, partes o porciones de ellas a las que se opone, y la asignación objeto de esos reparos no tendrá validez."

El peticionario no pone en tela de juicio el significado de la versión española, pero sostiene que se trata de una mala traducción. La contención es que la palabra "thereof" se refiere al "proyecto de ley" mencionado en la primera parte de la oración, no a las "partidas" mencionadas posteriormente en dos ocasiones en la misma oración y en el texto inmediatamente anterior a la palabra "thereof". De ahí que el peticionario insista en que la versión española "porciones de las mismas" sea enmendada en el sentido que lea "porciones del mismo (el proyecto)." En apoyo de este criterio no se cita ninguna regla de interpretación gramatical.

Cuando el significado de las palabras usadas en un estatuto es enteramente claro, debe dársele efecto a tal significado, aún bajo la regla de estricta hermenéutica que, al estar envuelta la concesión de una facultad, es aplicable solamente en caso de duda sobre cuál fué la intención de la legislatura. Cuando el Congreso dijo que el Gobernador "podrá él hacer objeciones a una o más de dichas partidas, o a cualquiera parte o partes, porción o porciones de las mismas," quiso decir, a nuestro juicio, que "podrá él hacer objeciones a una o más de dichas partidas, o a cualquiera parte o partes, porción o porciones" de tales partidas.

No es necesario que discutamos los casos en que se funda el peticionario. Una comparación del párrafo arriba citado de nuestra Ley Orgánica con las varias disposiciones constitucionales envueltas en dichos casos bastará para distinguirlas. En ninguno de dichos casos la corte interpretaba disposiciones constitucionales que por su claro contexto autorizaban que se hicieran objeciones a cualquiera parte o porción de una partida, así como también la desaprobación de la partida. Para los fines de esta opinión puede libremente admitirse que la concesión de autoridad para desaprobar cualquiera partida o partidas, sin más, no puede ser ampliada mediante interpretación en el sentido de incluir la facultad de desaprobar cualquiera parte o porción de tal partida o partidas. Ese es el nervio de cuanto ha sido resuelto por la mayoría, o por todos, de los casos en que se basa el peticionario. De algunas de las opiniones más efusivas puede deducirse que ciertas cortes, quizá, hubiesen dudado de la sapiencia de una disposición tal como la que el Congreso creyó prudente incluir en nuestra Carta Orgánica. En ninguno de los casos citados por el peticionario hallamos nada que milite contra la conclusión a que llegamos nosotros respecto al significado de tal disposición.

En una nota al caso de *Commonwealth ex rel. Elkin* v. *Barnett,* 55 L.R.A. 882, página 883, puede hallarse una lista de las varias disposiciones constitucionales en los distintos

estados. En la página 885 se expone el resultado en la siguiente forma:

"De lo anterior se verá que en Alabama, Arkansas, Louisiana, Colorado, Maryland, Montana, Nebraska, Pennsylvania y South Dakota el gobernador tiene facultad para vedar 'cualquier partida o partidas.' En Minnesota, New Jersey, New York, Texas y Utah tiene facultad para vedar 'una o más de tales partidas.' En Missouri, California y Washington tiene facultad para vedar 'una o más partidas.' En North Dakota puede vedar 'cualquier partida o partidas, o parte o partes de cualquier proyecto de asignaciones.' En Illinois el proyecto debe constar 'en distintas partidas y secciones,' y provee que el gobernador puede objetarlas en caso de que no apruebe 'una o más de las partidas o secciones.' En West Virginia puede vedar 'cualquier partida o asignación en él contenida.' En Kentucky puede vedar 'cualquier parte o partes' 'que comprendan distintas partidas.' En Mississippi puede objetar 'partes de cualquier proyecto de asignaciones.' "

"Una interpretación estricta de las disposiciones arriba anunciadas parecería indicar," dice el editor de la nota, "que, excepto en los estados de North Dakota y Mississippi, la facultad del gobernador se limita a eliminar 'una partida.' " No es necesario que vayamos tan lejos. Aun en el caso de North Dakota, podría admitirse que el contexto de la disposición constitucional deja lugar a duda y está sujeto a interpretación. La fraseología de nuestra Ley Orgánica es mucho más explícita. El Congreso se daba cuenta de la fraseología estereotipada de las constituciones estaduales y de la interpretación dada a las mismas por las cortes de los estados. En vez de seguir cualquiera de estos precedentes, eligió establecer una innovación inequívoca y al elegir las palabras dejó muy poco a la imaginación.

Como apéndice al caso *Peebly* v. *Childers,* tal cual ha sido publicado en el Tomo II, Libro I, de su obra "Casos sobre Gobierno Constitucional" por Edwin F. Albertsworth, aparece un extracto tomado de una revista, publicado por Alison Reppy, intitulado "Facultad del Ejecutivo para Reducir una Partida en un Proyecto de Asignaciones," 4 Tex.

Law Rev., 182, págs. 204, 205 y 206, del cual hacemos la siguiente cita:

"Las cortes han aducido varias razones por las cuales el poder para reducir una partida de un proyecto de asignaciones no debe ser conferido al Gobernador. Así, pues, por ejemplo, se ha indicado que el conferir tal facultad, convertiría el poder del veto poseído por el Gobernador en un poder creativo; violaría la doctrina de la separación de poderes y permitiría al Ejecutivo determinar la suma que ha de asignarse, limitada tan sólo por el máximum fijado por la legislatura. . . . Esta objeción no es seria y podría contestarse diciendo que no habrá infracción alguna, toda vez que el Gobernador, al vedar un proyecto actúa como parte de la maquinaria legislativa. Otra objeción es que peligraría la libertad ciudadana. . . . Mas estas objeciones parecen ser más aparentes que reales. . . . El verdadero problema es si como cuestión de sana política gubernamental debe concedérsele al Gobernador la facultad de reducir una partida en un proyecto de asignaciones. Fuera de disposiciones constitucionales, el suscribiente sostiene que no hay regla de derecho que rija la solución de este problema; que se trata más bien de una cuestión de ciencia gubernamental. Para llegar a esta decisión, la verdadera cuestión en controversia será: ¿Qué clase de disposición funcionaría mejor, la que limita el poder del veto a partidas específicas, o la que se extiende a partidas?"

Podríamos atacar por otros fundamentos lo correcto del argumento que admite que la eliminación de una partida es meramente legislación destructiva, y no "creativa," y al mismo tiempo insiste en que el reducir el importe de una partida es "legislación creativa;" mas, sin embargo, sea ello como fuere, no tenemos mayor duda respecto a la facultad del Congreso para conferir al Gobernador de Puerto Rico la autoridad para vedar en parte una partida, que la que tenemos respecto a qué se intentó con la disposición de que "podrá él hacer objeciones a una o más de dichas partidas, o a cualquier parte o partes, porción o porciones de las mismas."

El peticionario alega substancialmente, como segunda causa de acción, que está dentro del Servicio Civil Clasificado; que su cargo cae dentro de las disposiciones de la sección 6 de la Ley número 87 de 1931 (pág. 535); que en el presu-

puesto de 1934–35 la Legislatura asignó como sueldo para dicho cargo la suma de $3,325; que el Gobernador, en connivencia con el codemandado, E. Garrido Morales, redujo este sueldo a $2,400; que esta rebaja ha colocado el sueldo del peticionario casi a la altura del sueldo del Jefe de la División de Plomería, que asciende a $2,280; y que equivale a la abolición arbitraria del cargo del peticionario, y es por ende nula, en exceso de la autoridad ejecutiva, contraria a la Ley del Servicio Civil y carece de todo valor y efecto por las razones siguientes:

"(a) Porque el Gobernador de Puerto Rico carece de autoridad para reducir el sueldo de vuestro peticionario;

"(b) Porque aun teniendo dicha autoridad no puede ni debe usarla sino dentro de la mejor buena fe, respetando los derechos adquiridos por el peticionario a virtud de la Ley de Servicio Civil;

"(c) Porque la reducción del sueldo de vuestro peticionario es tal y tan excesiva que equivale a la abolición del cargo, y el cargo no fué abolido por la Legislatura de Puerto Rico;

"(d) Porque la reducción del sueldo de vuestro peticionario ha colocado dicha plaza a la altura de las que ocupan el inspector de plomería y otros empleados subalternos, no facultativos, del Departamento, y, por tanto, no puede esperarse la eficiencia necesaria en el desempeño del mismo.

"(e) Porque la mencionada reducción del sueldo de vuestro peticionario no se debe a plan alguno de economía, ni mucho menos a mejorar la eficiencia del servicio, sino, simple, llana y escuetamente, al plan de castigar, humillar y mortificar a vuestro peticionario, provocando asimismo su renuncia del cargo que ocupa."

A esto sigue una alegación, por información y creencia, al efecto de que el proceder del Gobernador se debió enteramente a un plan preconcebido del susodicho E. Garrido Morales de eliminar de su departamento a todos los funcionarios y empleados que pertenezcan al partido político del peticionario, conforme se ha hecho en numerosos casos recientes—plan preconcebido que indujo a adoptar al Gobernador, y que éste secundó, en el caso de autos, bien por acción con-

nivente directa o por dejación pasiva, confiando en el consejo e indicaciones del referido E. Garrido Morales.

En apoyo de esta segunda causa de acción, el peticionario cita de una opinión emitida por el Juez Asociado Sr. Peckham que aparece publicada en 123 N. Y. 173, 25 N. E. 274, en que este juez indica el fin de las leyes de servicio civil, los males que se intentaron remediar, y ciertas diferencias existentes entre el antiguo sistema y el moderno en materia de nombramientos para los cargos y el desempeño de éstos. La única autoridad adicional citada es *De Merritt* v. *Weldon*, 154 Cal. 545. La doctrina de dicho caso está comprendida en el sumario, en la siguiente forma:

"De conformidad con las disposiciones del artículo 855 de la Ley General de Corporaciones Municipales, la Junta de Síndicos de la ciudad de Ukiah, corporación municipal de sexta clase, tiene el derecho absoluto a fijar la remuneración del alguacil en la suma que creyere prudente, libre de revisión o supervisión por parte de las cortes, sujeto a la limitación de que no puede disponer efectivamente que no habrá compensación alguna, ni destruir prácticamente el cargo fijando la remuneración en una suma tan baja que ninguna persona desempeñaría los deberes del mismo por la compensación así fijada. Tal disposición por parte de los síndicos estaría en conflicto con la ley de la legislatura y sería, por ende, nula.

"Cuando un estatuto estadual exige de un cuerpo municipal legislativo que fije la remuneración de un funcionario municipal, la cuestión relativa a qué es una compensación razonable se dirige a él solamente y no a las cortes, y no importa lo mucho que una corte pueda estar en desacuerdo con la conclusión del cuerpo legislativo al efecto de que la suma designada es razonable, ella no puede intervenir en ausencia de fraude o mala fe. Las cortes se niegan a considerar motivos legislativos excepto cuando éstos se desprenden de la faz de las actuaciones o pueden inferirse de su aplicación y efecto, considerados a la luz de aquellos asuntos de que puede tomarse conocimiento judicial.

"Tan sólo para el cumplimiento de tales deberes como los impuestos al alguacil por el artículo 880 de la Ley General de Corporaciones Municipales, las cortes no pueden resolver que una compensación de diez dólares al mes, fijada por una ordenanza de la Junta de Síndicos de la ciudad de Ukiah, que tiene unos 1,800 habitantes,

sea tan inadecuada que equivalga a la destrucción del cargo de alguacil, por no haber persona competente que desempeñe los deberes del mismo por tal sueldo.''

El peticionario es director médico residente de un hospital de enfermedades contagiosas y médico visitante del Leprocomio Insular. Quizá podría haber alguna dificultad para hallar un médico de su experiencia y de su nivel (*standing*) profesional que aceptara el nombramiento para el cargo en cuestión por un sueldo de $2,400. Sin embargo, no podemos asumir con el peticionario que no podría hallarse un hombre competente.

*Debe declararse sin lugar la petición.*