Antonio Soto Zaragoza, demandante y apelante, *v.* Leslie A. MacLeod y Rafael Sancho Bonet, en su carácter de Auditor y Tesorero de Puerto Rico, respectivamente, demandados y apelados.

Núm. 7857.—*Sometido:* Marzo 26, 1940. *Resuelto:* Mayo 22, 1940.

---

* Nota: Véase el prefacio.

*C. H. Juliá,* abogado del apelante; *Hon. Procurador General George A. Malcolm* y *E. de Aldrey, Procurador General Auxiliar,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

La petición en este caso se basa en los siguientes hechos:

Antonio Soto Zaragoza fué nombrado para el cargo de Jefe de Negociado y Secretario de la Junta de Revisión e Igualamiento y tomó posesión en noviembre 27, 1933, todo ello de acuerdo con las secciones 4, 5 y 6 de la Ley núm. 75 de agosto 2 de 1923 ((1) pág. 605), titulada "Ley para crear una nueva Junta de Revisión e Igualamiento y enmendar los artículos 308, 310 y 313 del Título IX, Capítulo 1 del Código Político de Puerto Rico, y para otros fines," que en lo pertinente leen así:

"Sección 4.—Por la presente ley se crea el Negociado de la Junta de Revisión, que se compondrá de: un jefe, que será a su vez, secretario nato de la Junta de Revisión e Igualamiento; un jefe auxiliar y subsecretario; un inspector; un taquígrafo en inglés y español y traductor; dos mecanógrafos y un mensajero. El Secretario tendrá el deber de llevar dos libros de actas,...

"Sección 5.—El Tesorero de Puerto Rico procederá a nombrar con carácter fijo y permanente el personal del Negociado de la Junta de Revisión, como sigue:

| | |
|---|---:|
| Un Jefe de negociado y secretario de la Junta de Revisión e Igualamiento, con sueldo anual de_____ | $4, 000 |
| Un jefe auxiliar y subsecretario, con sueldo anual de_____ | 3, 000 |
| Un inspector, con sueldo anual de_____ | 2, 500 |
| Un taquígrafo y traductor, con sueldo anual de_____ | 1, 800 |
| Dos mecanógrafos, con sueldo anual de $700 cada uno_____ | 1, 400 |
| Un mensajero, con sueldo anual de_____ | 500 |

"  .        .      .       .       .       .       .       .

"Sección 6.—Para pago del sueldo de los empleados relacionados en la anterior sección, así como para mobiliario, máquinas de escribir y efectos de escritorio y para gastos de viajes y dietas de los miembros de la junta, y de los empleados del Negociado cuando tuvieren necesidad de viajar en cumplimiento de sus deberes oficiales, se asigna la suma de treinta mil (30,000) dólares anuales de cualquier dinero existente en la Tesorería de Puerto Rico no destinados a otros fines en los años económicos de 1923–24 y 1924–25 y sucesivos años fiscales."

Alega el demandante que desde la fecha de su nombramiento hasta junio 30, 1936, se le pagó su sueldo a razón de $3,135 anuales y desde julio 1, 1936, hasta junio 30 de 1938 a razón de $3,500, privándole así de la suma total de $3,241.76, la cual reclama mediante este procedimiento de *mandamus,* por carecer de otro remedio legal adecuado.

En su contestación negaron los demandados que el cargo que ocupa el peticionario tuviera en la fecha en que se hizo su nombramiento un sueldo de $4,000, y alegaron en contrario que en la fecha en que fué nombrado y tomó posesión el peticionario, dicho cargo tenía asignado en presupuesto un sueldo de $3,135 anuales. Negaron específicamente todos los hechos esenciales de la demanda, y como defensas especiales alegaron: (*a*) que la demanda no aduce hechos suficientes para determinar una causa de acción, y (*b*) que siendo el cargo que ocupa el peticionario uno que no tiene término de duración, no es de aplicación el párrafo 13 de la sección 34 de la Ley Orgánica de Puerto Rico.

Visto el caso ante la Corte de Distrito de San Juan, dictó ésta sentencia desestimando la petición de *mandamus,* y condenando al peticionario al pago de costas, sin incluir honorarios de abogado. En el presente recurso interpuesto por el peticionario se señalan como errores cometidos por la corte sentenciadora:

(1) Haber declarado que el párrafo 13 de la sección 34 de la Carta Orgánica es sólo aplicable a funcionarios públicos nombrados por término fijo.

(2) Al declarar que el peticionario no es un funcionario público.

(3) Al no declarar si un funcionario que acepta un cargo con una limitación y un sueldo ya establecido tiene o no derecho a que se le pague el sueldo completo que estatuye la ley.

(4) Al no declarar que un estatuto especial no puede modificarse por una ley general como lo es la del presupuesto.

Discutiremos dichos señalamientos en el mismo orden en que aparecen expuestos.

■ La Ley Orgánica, en su sección 34, párrafo 13, dispone:

"Artículo 34.—.     .      .      .      .      .

"Con excepción de aquellos casos en que se disponga lo contrario en esta Ley, ninguna ley prorrogará el término de ningún *funcionario público,* ni aumentará o disminuirá su sueldo o emolumentos *después de su elección o nombramiento,* ni permitirá a ningún *funcionario o empleado* percibir compensación por más de un cargo o empleo." (Bastardillas nuestras.)

Es indudable que todas las prohibiciones contenidas en el párrafo transcrito, con excepción de la última, se refieren exclusivamente a *funcionarios* públicos nombrados por un término fijo. Después que un funcionario público ha sido elegido y nombrado para ocupar un cargo por un término y sueldo fijados por la ley de su creación, ninguna ley puede prorrogarle el término, ni aumentarle ni disminuirle el sueldo a que tenía derecho en la fecha de su elección o nombramiento. Que la ley no extiende esa protección a los "empleados públicos" es evidente, pues solamente habla de ellos cuando dispone que ninguna ley permitirá a ningún *funcionario o empleado* percibir compensación por más de un cargo o empleo.

■ No creemos necesario para la resolución del caso entrar a discutir si el Jefe de Negociado y Secretario de la Junta de Revisión e Igualamiento es un funcionario público o un simple empleado, aun cuando nos inclinamos a convenir con la corte inferior en que es un "empleado," por ser sus deberes de carácter puramente clerical, sin envolver en

manera alguna delegación ejecutiva de soberanía por el estado. 22 R.C.L. 374.

■ La aceptación de la teoría más favorable al peticionario, o sea la de que él es un funcionario público, no variaría en nada nuestra decisión. El peticionario, según su propia alegación, fué nombrado y tomó posesión de su cargo en 27 de noviembre de 1933, cuando ya regía el presupuesto para el año fiscal 1932–1933, en el que se asignaba la suma de $3,135 para pagar el sueldo del Jefe de Negociado y Secretario de la Junta de Revisión e Igualamiento durante dicho año económico. Esta Corte Suprema ha resuelto en varios casos que un funcionario nombrado y que toma posesión por un término y con un sueldo fijados por una ley tiene derecho a la diferencia existente entre el sueldo fijado por la ley y las sumas asignadas en el presupuesto durante el término para el cual dicho funcionario fué nombrado. Véanse: *Durand* v. *Sancho Bonet,* 50 D.P.R. 940; *Ponsa Parés* v. *Winship,* 51 D.P.R. 160; y *Samalea* v. *Winship,* 51 D.P.R. 240.

El caso de *Ponsa Parés* v. *Winship,* 53 D.P.R. 915, es aplicable al de autos. Ponsa Parés había ocupado el cargo de Fiscal del Distrito de Bayamón por un término de cuatro años, durante los cuales recibió el sueldo de $3,850 anuales fijado por la ley de 1930. En julio 13 de 1935 se le nombró para un nuevo término de cuatro años, cuando ya había empezado a regir el presupuesto para el año fiscal 1935–36, en el que se asignaba la suma de $3,291.75 para el sueldo del Fiscal de Bayamón. Al resolver el caso en contra del demandante dijimos:

"El espíritu y fin del párrafo décimotercero de la sección 34, supra, son impedir acción legislativa luego de hacerse una nominación o renominación, según sea el caso. En el presente recurso la Asamblea Legislativa actuó con anterioridad a la fecha del segundo nombramiento....

"...Lo que el párrafo décimotercero prohibe es que se prorrogue el término de ningún funcionario público o que se aumente o disminuya su sueldo durante el término para el cual fué nombrado, de

ser nombrado por un término, no importa cuál sea la regla para aquellos casos en que no existe un término fijo. (Citas.)"

En el caso de autos la Asamblea Legislativa ya había actuado, reduciendo el sueldo a $3,135 anuales, cuando el peticionario aceptó y tomó posesión de su cargo. El peticionario no puede alegar que se ha violado el precepto constitucional por él invocado, pues la acción legislativa se realizó con anterioridad a su nombramiento, y él aceptó el cargo a sabiendas de que el sueldo que había de recibir era el de $3,135 anuales fijado en la Ley de Presupuesto. El único cambio hecho en el sueldo del peticionario con posterioridad a la fecha de su nombramiento fué, según sus propias alegaciones, para aumentárselo a $3,500 anuales en los presupuestos para los años fiscales 1936–37 y 1937–38, de lo cual no se queja el peticionario.

Deben desestimarse los dos primeros señalamientos.

El tercer señalamiento debe también ser desestimado por la autoridad del caso de *Ponsa Parés* v. *Winship,* 53 D.P.R. 915. Allí resolvimos que un funcionario que acepta un cargo con un sueldo fijado en la Ley de Presupuesto no tiene derecho a que se le pague el sueldo mayor fijado originalmente por la ley creadora del cargo.

La cuestión que nos presenta el cuarto señalamiento es la siguiente: ¿Es constitucionalmente válida la reducción hecha en el presupuesto del sueldo del Jefe del Negociado y Secretario de la Junta de Revisión e Igualamiento fijado por la Ley núm. 75 de 1923?

En apoyo de su contención de que tal reducción es anticonstitucional invoca el apelante el párrafo 15 de la sección 34 de la Carta Orgánica, que dice:

"El proyecto de presupuesto general no comprenderá nada más que asignaciones para los gastos ordinarios de los departamentos ejecutivos, legislativo y judicial, para el pago de intereses de la deuda pública y para escuelas públicas. Todas las demás asignaciones se consignarán en proyectos separados, abarcando cada uno una sola materia."

Y arguye que no siendo el peticionario un funcionario de ninguno de los departamentos mencionados en el párrafo arriba transcrito, su sueldo no podía ser incluído en y mucho menos rebajado por el presupuesto. Veamos si tiene o no razón el apelante.

El artículo 308 del Código Político, según fué enmendado por la sección 1 de la Ley núm. 75 de 1923 (Leyes de 1923, (1) pág. 605) dispone que para la revisión de la tasación de la propiedad y resolver las reclamaciones de los contribuyentes, "habrá en el Departamento de Hacienda, una Junta permanente de revisión e igualamiento con oficina abierta, etc." La sección 5 de la misma Ley núm. 75, supra, dispone que el personal del Negociado de la Junta de Revisión, creado por la sección 4, supra, será nombrado con carácter firme y permanente por el Tesorero de Puerto Rico. Como se ve, la Junta de Revisión e Igualamiento está adscrita por virtud de la ley de su creación al Departamento de Hacienda, que forma parte de la rama ejecutiva del Gobierno Insular. El presupuesto para 1933-34, que regía en la fecha en que el peticionario tomó posesión de su cargo, ajustándose a lo dispuesto en la Ley Orgánica, asigna los fondos necesarios para cubrir los gastos ordinarios del Gobierno en las tres grandes ramas o departamentos que lo constituyen: Departamento Legislativo, Departamento Ejecutivo y Departamento Judicial.

El Departamento Ejecutivo está constituído por la oficina del Gobernador; la del Secretario Ejecutivo; la Rama Ejecutiva del Departamento de Justicia o sea la oficina del Procurador General; el Departamento de Hacienda, con todos los negociados, secciones, divisiones y juntas al mismo adscritos, entre ellos la Junta de Revisión e Igualamiento; la oficina del Auditor, con todos sus negociados y divisiones; el Departamento de Instrucción y los departamentos del Interior, Sanidad, Agricultura y Comercio, y del Trabajo.

Los sueldos de los empleados fijos y permanentes de la Junta de Revisión e Igualamiento son y deben ser conside-

rados como gastos ordinarios del Departamento de Hacienda, que es parte integrante del Departamento Ejecutivo del Gobierno Insular; y las asignaciones para cubrir dichos sueldos pueden ser incluídas en el presupuesto general, sin que al hacerlo así se viole precepto alguno de la Ley Orgánica.

El apelante invoca también a su favor los párrafos 8 y 9 de la sección 34 de la Ley Orgánica, que leen así:

"No se aprobará ningún proyecto de ley, *con excepción de los de presupuesto general,* que contenga más de un asunto, el cual deberá ser claramente expresado en su título; pero si algún asunto que no esté expresado en el título fuere incluído en cualquier ley, esa ley será nula solamente en aquella parte de ella que no haya sido expresada en el título. (Itálicas nuestras.)

"Ninguna ley será restablecida o enmendada, ni se dará mayor alcance a sus disposiciones, ni se conferirán las facultades en ella contenidas, haciendo referencia a su título solamente, sino que toda la parte de ella que sea restablecida, enmendada, extendida o conferida será decretada nuevamente y publicada en su totalidad."

La Corte Suprema de Washington interpretó disposiciones idénticas de la Constitución de dicho Estado, en un caso similar al de autos: *State* v. *Clausen,* 138 P. 653. La Asamblea Legislativa pasó una ley fijando el sueldo del Auditor Auxiliar, y posteriormente, en la ley general de presupuesto se aumentó dicho sueldo. El Auditor Auxiliar solicitó un auto de *mandamus* para que se obligase al Auditor a pagarle el sueldo fijado por el presupuesto. La cuestión fué planteada así por la corte:

"Si la Asamblea Legislativa puede proveer en una ley de presupuesto general para el aumento de sueldo de un funcionario cuyo sueldo ha sido previamente fijado por una ley general, y, en el caso de que pueda, si el título de la ley de presupuesto general de 1913 es suficiente bajo el artículo 2, secciones 19 y 37 de la Constitución del Estado, son las cuestiones a decidir.

. . . . . . . . .

"Las leyes de presupuesto, aun cuando son de duración limitada, son, sin embargo, leyes generales. Son muy cuidadosamente prepa-

radas y consideradas con madurez. Si no violan la Constitución y se encuentra que están en un conflicto irreconciliable con una ley permanente, debe sostenerse que esta última ha sido suspendida o derogada durante el tiempo en que la ley de presupuesto esté en vigor. (Citas.)

"Durante más de 20 años la práctica seguida por la Asamblea Legislativa y por los departamentos ejecutivos del estado ha sido la de crear nuevos cargos y empleos y fijar los sueldos de los nuevos y de los antiguos funcionarios mediante una simple referencia al cargo en la ley de presupuesto general de gastos. Ha sido, y está bien que así sea, la política de las cortes al interpretar los estatutos averiguar cuál ha sido la intención de la rama legislativa del gobierno. No puede encontrarse una luz más segura que la de la práctica establecida por el cuerpo legislativo, porque un hábito, si es tolerado y consentido por el pueblo durante un período de años, y si no viola en manera alguna las disposiciones de la Constitución, se convierte en una costumbre, y de la costumbre se dice que no existe ley más alta que ella."

Es muy amplia la jurisprudencia que sostiene que la Asamblea Legislativa puede aumentar o disminuir el sueldo de un funcionario o empleado público, mediante la ley de presupuesto, aun cuando exista una ley por la cual se fijó el sueldo para el cargo o empleo. La única limitación es la de que al hacer uso de esa facultad no debe violarse ningún precepto constitucional. Véanse: *Buchanan* v. *State Treas.*, 68 S. C. 411, 415, 47 S. E. 683; *Plowden* v. *Beattie*, 193 S. E. 651; *U. S.* v. *Mitchell,* 109 U. S. 146, 27 L. Ed. 887; *Belknap* v. *U. S.,* 150 U. S. 588, 37 L. Ed. 1191.

En *Belknap* v. *U. S.,* supra, la situación era idéntica a la del presente caso. Belknap fué nombrado agente de las Tribus Indias de California de acuerdo con una ley que fijaba para dicho cargo un sueldo de $1,800 anuales. En la fecha en que se le nombró, el presupuesto asignaba solamente $1,500 para el pago de dicho sueldo. Belknap ocupó el cargo durante 10 años, recibiendo $1,500 por cada uno de los primeros cinco años y $1,000 por los cinco restantes. En la acción entablada para recobrar la diferencia entre el sueldo

fijado por el estatuto creador del cargo y el asignado en el presupuesto, se resolvió:

"Cuando a estos hechos se añade que el demandante al recibir su primer nombramiento tuvo aviso de que su sueldo había de ser $1,500, que era el asignado con anterioridad por el Congreso, y al ser nombrado de nuevo que era de $1,000, y que durante sus años de servicio él recibió el sueldo asignádole en pago completo de sus servicios, creemos que debemos resolver que él ha recibido todo lo que en justicia y por ley tiene derecho a recibir, y que la sentencia de la Corte de Reclamaciones debe ser confirmada."

Véanse además: *United States* v. *Fisher,* 109 U. S. 143, 27 L. Ed. 885; *Wallace* v. *U. S.,* 133 U. S. 180, 33 L. Ed. 571; *Dunwoody* v. *U. S.,* 143 U. S. 578, 36 L. Ed. 269; *O'Donoghue* v. *U. S.,* 289 U. S. 516, 77 L. Ed. 1356; y *Williams* v. *U. S.* 289 U. S. 553, 77 L. Ed. 1372.

*Por las razones expuestas debe confirmarse la sentencia que dictó la Corte de Distrito de San Juan en 10 de junio de 1938.*

El Juez Asociado Sr. Hutchison está conforme con el resultado.*