Manuel León Parra, demandante y apelante, *v.* Patrick J. Fitzimmons · y Rafael Buscaglia, en su carácter de Auditor y Tesorero de Puerto Rico, respectivamente, demandados y apelados.

Núm. 8435.—*Sometido:* Noviembre 13, 1942. *Resuelto:* Febrero 3, 1943.

*Celestino Iriarte, F. Fernández Cuyar y H. González Blanes,* abogados del apelante; *Hon. Procurador General Interino M. Rodríguez Ramos y R. García Cintrón, Procurador General Auxiliar,* abogados de los apelados.

El Juez Presidente Señor Del Toro emitió la opinión del tribunal.

Éste es un recurso de *mandamus* iniciado en la Corte de Distrito de San Juan por un comisionado de la Comisión Industrial de Puerto Rico solicitando que se ordenara al Auditor y al Tesorero de la Islà que autorizara el primero y le pagara el segundo cierta suma que se le descontó de sus sueldos durante los años económicos 1932–33, 1933–34 y 1934–35. Envuelve la interpretación del Acta Orgánica.

Manuel León Parra, el comisionado demandante, desempeñó su cargo desde abril 29, 1929 a junio 30, 1935, a virtud

de nombramientos hechos por el Gobernador de acuerdo con la Ley núm. 40 de 1929 ((1) pág. 223) creadora de la Comisión, cuya ley fija el término del cargo de comisionado en tres años y su sueldo en tres mil quinientos dólares.

Percibió su sueldo en la cantidad fijada en la dicha ley hasta junio 30, 1932, y a partir de esa fecha, no obstante haber la Legislatura asignado en los presupuestos que aprobara para regir en los años económicos de 1932–33 y 1933–34 las sumas correspondientes en armonía con la ley, se le descontaron determinadas cantidades en virtud de la actuación del Gobernador a que se refieren los *statements* que siguen enviados por dicho funcionario a la Secretaría Ejecutiva al remitirle los presupuestos:

"Government House, Porto Rico.—San Juan, Puerto Rico, 13 de mayo de 1932.—En virtud de la autoridad que me confiere la Sección 34 de la Ley Orgánica de Puerto Rico, las siguientes partidas y partes o porciones de las mismas del Proyecto de la Cámara núm. 232, para proveer las asignaciones necesarias para el funcionamiento de la Comisión Industrial durante el año económico de 1932–33, quedan por la presente objetadas por el que suscribe:

"Página 1

"  *      *      *      *      *      *      *      *

"línea 17—táchese '3,500' e insértese '3,150'

"  *      *      *      *      *      *      *      *

"(Sello) (Firmado) José Padín, Gobernador Interino de Puerto Rico."

"Government House, Porto Rico.—San Juan, Puerto Rico, 8 de mayo de 1933.—En virtud de la autoridad que me confiere la Sección 34 de la Ley Orgánica de Puerto Rico, las siguientes partidas y partes o porciones de las mismas, del Proyecto de la Cámara núm. 302, titulado . . . quedan por la presente objetadas por el que suscribe:

"Página 1

"  *      *      *      *      *      *      *      *

"Línea 10, táchese '3,500' y '7,000' e insértese '2,992.50' y '5,985.00' respectivamente.—(Sello) (Firmado) James R. Beverley."

Durante el año económico de 1934–35 tampoco recibió el peticionario el sueldo de $3,500, sino el de $2,992.50 asignado

por la Legislatura en la Ley de Presupuesto que con tal asignación aprobó el Gobernador.

¿Fué legal la rebaja? La corte de distrito sostuvo que lo fué y es contra su sentencia declarando sin lugar la demanda que se ha interpuesto el presente recurso de apelación.

En primer lugar sostiene el apelante que si bien el Gobernador, de acuerdo con el artículo 34 del Acta Orgánica de Puerto Rico, tiene facultad para hacer objeciones a una o más partidas de cualquier proyecto de ley que le fuere presentado, no la tiene para reducirlas.

Esa cuestión quedó decidida por esta propia corte en el caso de *De la Rosa* v. *Winship, Gobernador,* 47 D.P.R. 330, en contra del criterio que sustenta el apelante. La opinión de la corte fué emitida por su Juez Asociado Sr. Hutchison. Comienza:

"El peticionario, en su primera causa de acción, ataca la facultad del Gobernador para reducir una partida en un proyecto de presupuesto en armonía con la autoridad conferídale por el artículo 34 de la Carta Orgánica."

Transcribe lo pertinente del citado artículo, en inglés y en castellano, y dice:

"El peticionario no pone en tela de juicio el significado de la versión española, pero sostiene que se trata de una mala traducción. La contención es que la palabra 'thereof' se refiere al 'proyecto de ley' mencionado en la primera parte de la oración, no a las 'partidas' mencionadas posteriormente en dos ocasiones en la misma oración y en el texto inmediatamente anterior a la palabra 'thereof.' De ahí que el peticionario insista en que la versión española 'porciones de las mismas' sea enmendada en el sentido que lea 'porciones del mismo (el proyecto).' En apoyo de este criterio no se cita ninguna regla de interpretación gramatical. Cuando el significado de las palabras usadas en un estatuto es enteramente claro, debe dársele efecto a tal significado, aún bajo la regla de estricta hermenéutica que, al estar envuelta la concesión de una facultad, es aplicable solamente en caso de duda sobre cuál fué la intención de la Legislatura. Cuando el Congreso dijo que el Gobernador 'podrá él hacer objeciones a una o más de dichas partidas, o a cualquiera parte o partes,

porción o porciones de las mismas,' quiso decir, a nuestro juicio, que 'podrá él hacer objeciones a una o más de dichas partidas, o a cualquiera parte o partes, porción o porciones' de tales partidas.''

Se refiere entonces a la jurisprudencia que cita el peticionario, en los siguientes términos:

''No es necesario que discutamos los casos en que se funda el peticionario. Una comparación del párrafo arriba citado de nuestra Ley Orgánica con las varias disposiciones constitucionales envueltas en dichos casos bastará para distinguirlas. En ninguno de dichos casos la corte interpretaba disposiciones constitucionales que por su claro contexto autorizaban que se hicieran objeciones a cualquiera parte o porción de una partida, así como también la desaprobación de la partida. Para los fines de esta opinión puede libremente admitirse que la concesión de autoridad para desaprobar cualquiera partida o partidas, sin más, no puede ser ampliada mediante interpretación en el sentido de incluir la facultad de desaprobar cualquiera parte o porción de tal partida o partidas. Ese es el nervio de cuanto ha sido resuelto por la mayoría, o por todos, de los casos en que se basa el peticionario. De algunas de las opiniones más efusivas puede deducirse que ciertas cortes, quizá, hubiesen dudado de la sapiencia de una disposición tal como la que el Congreso creyó prudente incluir en nuestra Carta Orgánica. En ninguno de los casos citados por el peticionario hallamos nada que milite contra la conclusión a que llegamos nosotros respecto al significado de tal disposición.''

Menciona la nota al caso de *Commonwealth ex rel. Elkin v. Barnett*, 55 L.R.A. 882, 883, que contiene una lista de las varias disposiciones constitucionales sobre la materia en distintos estados de la Unión al interpretar algunas de las cuales las cortes resolvieron que el Gobernador no tenía la facultad de ''reducir'' y concluye:

''. . . . La fraseología de nuestra Ley Orgánica es mucho más explícita. El Congreso se daba cuenta de la fraseología estereotipada de las constituciones estatales y de la interpretación dada a las mismas por las cortes de los estados. En vez de seguir cualquiera de estos precedentes, eligió establecer una innovación inequívoca y al elegir las palabras dejó muy poco a la imaginación.''

Prosigue en el estudio de la filosofía de la concesión del poder de que se trata y considerando la alegación de que la

reducción en el caso concreto que se presentaba envolvía un plan preconcebido por el Comisionado de Sanidad para eliminar de su departamento a todos los funcionarios que pertenecieran al partido político del peticionario, se refirió a las autoridades citadas y terminó diciendo:

"El peticionario es director médico residente de un hospital de enfermedades contagiosas y médico visitante del Leprocomio Insular. Quizá podría haber alguna dificultad para hallar un médico de su experiencia y de su nivel (standing) profesional que aceptara el nombramiento para el cargo en cuestión por un sueldo de $2,400. Sin embargo, no podemos asumir con el peticionario que no podría hallarse un hombre competente."

Como puede verse, se dió al asunto la más detenida consideración. Las nuevas citas que en este caso se hacen para sostener el criterio contrario, no nos convencen de que la decisión de esta Corte sea errónea. Dichas citas lo son también de decisiones basadas en preceptos constitucionales distintos al nuestro y el hecho de que en el estado de California se hubiere tenido que enmendar la Constitución para conceder la facultad, carece de importancia porque la constitución que se enmendó no estaba redactada en los mismos términos que la Ley Orgánica de Puerto Rico.

Se insiste en que el *acto administrativo* realizado por el Gobernador constituye una enmienda a una ley y que el Gobernador carece de ese poder. No estamos conformes porque el Gobernador cuando actúa en el ejercicio de la facultad que le confiere la Carta Orgánica en su artículo 34, como actuó en este caso, lo hace como parte de la rama legislativa del gobierno. "En el ejercicio de su poder del veto," dijo Woodrow Wilson a la página 52 de su obra *Congressional Government,* Houghton, Mifflin and Company, novena edición, 1892, " . . . el Presidente no actúa como el ejecutivo sino como una tercera rama de la legislatura." Y lo mismo se ha resuelto con respecto al Gobernador. Véase *Arnett* v. *Meredith,* 275 Ky. 223, 121 S. W. (2d) 36, 37, 119 A. L. R. 1183, 1185.

■ Ahora bien, esta conclusión nos lleva a la consideración de este caso concreto en su totalidad, porque si el Gobernador actúa como parte de la legislatura cuando ejercita el poder que le confiere la Carta Orgánica en su artículo 34, claro es que no puede ir más lejos que lo que podría ir el poder legislativo mismo. Y el peticionario, refiriéndose a la reducción de sueldos, ha invocado la limitación constitucional que impone la propia Carta Orgánica a la legislatura en el párrafo 13 del mismo artículo 34 tantas veces citado, a saber:

"Con excepción de aquellos casos en que se disponga lo contrario en esta Ley, ninguna ley prorrogará el término de ningún funcionario público, ni aumentará o disminuirá su sueldo o emolumentos después de su elección o nombramiento, ni permitirá a ningún funcionario o empleado percibir compensación por más de un cargo o empleo."

Interpretando ese precepto de ley, esta corte en el caso de *Arjona* v. *Winship, Gobernador,* 49 D.P.R. 53, resolvió que

"Para que sea aplicable la limitación constitucional que en cuanto a aumento o disminución de sueldos establece el párrafo 13 del artículo 34 del Acta Orgánica de 1917, es necesario que el funcionario sea nombrado por término y sueldo fijados por ley. Si el sueldo sólo consta asignado en la ley de presupuesto, la Legislatura conserva el poder de variar la asignación de cuando en cuando que le reconoce el artículo 50 de dicha Ley Orgánica."

Lo que faltó en el caso de *Arjona,* supra, existe en éste. En el caso de *Arjona,* como en el caso de *De la Rosa,* supra, el sueldo de los funcionarios sólo estaba fijado en la ley de presupuesto que es ley de naturaleza transitoria, mientras que en éste el sueldo y el término del funcionario se fijaron en la ley creadora del organismo a que pertenecía, la núm. 40 de 1929, pág. 223, que es ley de naturaleza permanente, así:

"Artículo 1.—Que la sección 7 de la Ley de Indemnizaciones por Accidentes del Trabajo aprobada en 14 de mayo de 1928, queda por la presente enmendada en la siguiente forma:

" " *    *    *    *    *    *    *    *

" 'Sección 7.—La prestación del servicio de indemnizaciones a obreros estará a cargo de los siguientes organismos:

" " *    *    *    *    *    *    *    *

" '(*b*) Una comisión que por la presente se crea adscrita al Departamento de Agricultura y Trabajo, que se denominará Comisión Industrial de Puerto Rico, la que constará de tres comisionados, nombrados por el Gobernador de Puerto Rico, a propuesta del Comisionado de Agricultura y Trabajo, con el consejo y consentimiento del Senado Insular, uno de los cuales será designado presidente por el Gobernador de Puerto Rico. El término de sus cargos será de tres años y hasta que sus sucesores fueren legalmente nombrados y tomen posesión.

" 'El sueldo del presidente será de cuatro mil quinientos (4,500) dólares anuales y el de los otros dos comisionados, de tres mil quinientos (3,500) dólares anuales cada uno....' "

Concurren, pues, en este caso todos los requisitos que la ley y la jurisprudencia exigen para que rija la limitación constitucional. Y si el poder legislativo mismo por su representante genuino, único, en puridad de verdad, la legislatura, no podía hacer la rebaja bajo las circunstancias de este caso, menos pudo hacerla el gobernador actuando por excepción como una rama de ese poder. Las leyes deben interpretarse en su integridad y como una integridad interpretamos la Carta Orgánica para llegar a la conclusión que establecemos. Por supuesto que no estamos considerando una medida legislativa de carácter general adoptada con el propósito de hacer frente a una emergencia.

*Siendo ello así, se impone la revocación de la sentencia recurrida, debiendo dictarse otra declarando la demanda con lugar.*

El Juez Asociado Sr. Snyder no intervino.

MOCIÓN DE RECONSIDERACIÓN

Febrero 25, 1943

Se pide a este tribunal que reconsidere su sentencia de febrero tres en curso por virtud de la cual se revocó la ape-

lada y se declaró con lugar el *mandamus*. Ambas partes fueron oídas sobre la moción.

La reconsideración se solicita a base de que la sentencia de esta corte está en conflicto con sus anteriores decisiones en los casos de *Ponsa Parés* v. *Winship, Gobernador,* 53 D. P.R. 915, y *Soto* v. *MacLeod, Auditor,* 56 D.P.R. 807, en los que se resolvió, en el primero, que "Siendo el espíritu y fin del párrafo 13, sección 34 de la Carta Orgánica, en cuanto al aumento o disminución de sueldos o emolumentos se refiere, impedir cualquier acción legislativa luego, pero no antes, de hacerse una nominación o renominación, según sea el caso, la actuación de la legislatura insular al rebajar el sueldo del peticionario con anterioridad a la fecha de su nombramiento para un segundo término del cargo, no viola el párrafo 13, sección 34 mencionados," y en el segundo, que "Una persona que acepta un cargo con un sueldo fijado en Ley general de Presupuesto no tiene derecho a que se le pague el sueldo mayor fijado originalmente por la ley creadora del cargo."

La primera decisión del caso de *Ponsa Parés* v. *Winship, Gobernador,* supra, que es la invocada, partió del hecho de la renominación del funcionario demandante cuando ya su sueldo había sido rebajado por la legislatura misma en su ley de presupuesto, e igual ocurrió en cuanto a la decisión en el caso de *Soto* v. *MacLeod, Auditor,* supra, mientras que en éste de León Parra, cuando la renominación se hizo en junio 15, 1932, la legislatura había consignado en su ley de presupuesto una cantidad igual a la que fijaba la ley que creó el cargo, no siendo decisiva la rebaja que hiciera el gobernador por haber actuado, bajo las circunstancias del caso, sin facultad para ello.

A nuestro juicio es claro que el gobernador en el ejercicio del poder que le confiere la sección 34 de la Ley Orgánica no podría rebajar un sueldo que conste fijado por la ley creadora del cargo a que se aplica que fija también su término, y si ello es así tampoco podría hacerlo por el hecho

de que dicho sueldo se llevara también a la ley de presupuesto, ya que no cabe resolver que pueda realizarse por medios indirectos lo que no puede llevarse directamente a efecto.

Y ése fué aquí el caso. La ley creadora del cargo del peticionario León Parra fijó término y sueldo y la legislatura llevó al presupuesto el sueldo fijado por la ley, habiendo sido el gobernador el que hizo la rebaja. Interpretar la sección 34 de la Ley Orgánica en el sentido de abarcar esa situación especial, sería ir demasiado lejos, ya que se trata de un poder de excepción que debe ser interpretado restrictivamente. Como se dijo en el caso de *Arnett* v. *Meredith,* 275 Ky. 223, 121 S. W. (2d) 36, 119 A.L.R. 1183, 1185, citado en la opinión que sirvió de base a la sentencia cuya reconsideración se pide:

"Todas las cortes americanas ante las cuales se ha planteado la cuestión para su resolución—así como todos los comentaristas sobre la materia—unánimemente sostienen que el ejercicio por el Gobernador del poder del veto conferídole por la constitución local es un acto legislativo y envuelve una invasión por parte de la rama ejecutiva de las funciones de la rama legislativa, y que es una de las 'excepciones aquí expresamente señaladas. o permitidas,' como se expresa en la sección 28, supra, de nuestra Constitución.

"Un ejemplo de la afirmación universal de los comentaristas justificando lo anteriormente expuesto se encuentra en 59 C. J. 575, sección 101, que dice: 'bajo el sistema de gobierno adoptado en este país el jefe ejecutivo, bien el presidente o el gobernador, forma parte del poder legislativo; y mientras se dedica a considerar proyectos aprobados por la Legislatura y sometídosle para su aprobación o desaprobación, el gobernador actúa en capacidad de legislador, o ejercita un poder que es sustancialmente de carácter legislativo, y no actúa en su capacidad ejecutiva.' . . . . En verdad podría decirse que no hay diferencia de opinión entre las cortes y los comentaristas en relación con la validez de la afirmación, esto es, que el ejercicio del derecho del veto, siempre que es conferido por la constitución local, envuelve la ejecución de funciones legislativas y no ejecutivas. No hay, quizás, en nuestra Constitución (al igual que en las constituciones de otros estados) un principio más enfáti-

camente mantenido y guardado que el de división del gobierno provista por la Constitución en tres ramas separadas, supra; y, por tanto, las cortes han declarado unánimemente la regla de que todas las disposicines permitiendo intervenciones por un departamento en las funciones que pertenecen propiamente a otro, que puedan encontrarse en la Constitución, no son solamente mandatorias, *sino que deben interpretarse restrictivamente.*" (Itálicas nuestras.)

Tratándose pues de situaciones distintas, no existe el conflicto que se señala y en tal virtud *no procede la reconsideración que se pide.*

El Juez Asociado Sr. De Jesús no intervino.