ANA MARÍA FERRAO, LIDIA FLORES, JUANITA LÓPEZ RAMOS, AURA
LIDIA RIVAS y BELÉN JIMÉNEZ DE ALVARADO, demandantes.
y apeladas, *v.* RAFAEL DE J. CORDERO, AUDITOR DE PUERTO
RICO, y RAFAEL BUSCAGLIA, TESORERO DE PUERTO RICO, de-
mandados y apelantes.

Núm. 9438.—*Sometido:* Mayo 1, 1947. *Resuelto:* Mayo 19, 1947.

338

*Hon. Procurador General Interino Luis Negrón Fernández, y Carlos Santana Becerra, Procurador General Auxiliar,* abogados de los apelantes; *Félix Ochoteco, Jr., y Luis E. Dubón,* abogados de las apeladas.

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

La Ley número 212, Leyes de Puerto Rico, 1946, creó el Tribunal del Distrito Judicial de San Juan. La sección 13 provee un taquígrafo para cada juez, con clasificación de oficinista taquígrafo director. La sección 13 también dispone que cada juez nombrará su propio taquígrafo. De acuerdo con la sección 14 estos taquígrafos ocuparán sus cargos a voluntad del juez que los nombró.

La Ley número 212 fué aprobada el 26 de marzo de 1946, para regir inmediatamente. En su sección 15 la Legislatura asignó los sueldos de estos taquígrafos a razón de $2,100 anuales hasta el 30 de junio de 1946. La sección 15 dispone entonces que los emolumentos que devengarán los funcionarios

y empleados del Tribunal desde el primero de julio de 1946 serán los que se consignen en las siguientes leyes generales de presupuesto. Ésta fué aprobada por la Legislatura para 1946–47 con una partida de cinco taquígrafos para los jueces—C.S.C. Núm. de Grado, NC—a $2,100 cada uno, pero el Gobernador redujo esta partida a $1,500 cada uno. Ley número 514, Leyes de Puerto Rico, 1946, pág. 1563.

Las cinco empleadas que ocupaban estas plazas desde su creación, radicaron una petición de *mandamus* para obligar al Auditor y al Tesorero a pagarles a razón de $2,100 en vez de $1,500 anuales. durante el año fiscal 1946–1947. La corte de distrito dictó sentencia a favor de las peticionarias, y el Auditor y el Tesorero han apelado.

██ En este caso no está envuelto el párrafo 13 de la sección 34 del Acta Orgánica, 48 U.S.C.A. sec. 838, que prohibe a la Legislatura reducirle el sueldo a los funcionarios públicos bajo ciertas circunstancias. Véanse *León Parra* v. *Fitzimmons, Auditor*, 61 D.P.R. 351, confirmado en *Fitzimmons* v. *León*, 141 F.2d 886 (C.C.A. 1, 1944); *Arjona* v. *Winship, Gobernador*, 49 D.P.R. 53, confirmado en 87 F.2d 205 (C.C.A. 1, 1937); *Ponsa Parés* v. *Winship, Gobernador*, 53 D.P.R. 915. Las peticionarias son empleadas más bien que funcionarias públicas. Por tanto no están protegidas por el párrafo 13, y sus sueldos pueden reducirse por la Legislatura en la Ley General de Presupuesto, aun cuando sus haberes hubieran sido anteriormente fijados por leyes especiales creando sus plazas. *Fitzimmons* v. *León,* supra, 141 F.2d 886 a la pág. 888; *Ugarte* v. *MacLeod, Auditor*, 56 D.P.R. 842; *Soto* v. *MacLeod, Auditor*, 56 D.P.R. 807; *Williams* v. *United States*, 289 U.S. 553; *O'Donoghue* v. *United States*, 289 U.S. 516.

Sin embargo, en este caso nada tenemos que ver con los poderes de la Legislatura. Nuestro problema más bien es determinar el alcance del poder del Gobernador para vedar partidas conferídole por el párrafo 1 de la sección 34 de la

Carta Orgánica, 48 U.S.C.A. sec. 825. Sobre dicha cuestión, las peticionarias admiten que si la Legislatura fija el sueldo de un empleado de año a año en una Ley General de Presupuesto, el Gobernador puede reducirlo por su poder de vedar partidas. Véanse *Fitzimmons* v. *León,* supra; *Soto* v. *MacLeod, Auditor,* supra; *Ugarte* v. *MacLeod, Auditor,* supra; *De la Rosa* v. *Winship, Gobernador,* 47 D.P.R. 330.

Pero surge una cuestión diferente cuando la Legislatura fija el sueldo de un empleado en una ley especial y luego, en vez de ejercitar su poder de reducir el sueldo fijado en la ley especial, fija el mismo emolumento en la Ley General de Presupuesto. Bajo dichas circunstancias, de acuerdo con la primera parte de la opinión en el caso de *León,* el Gobernador no está autorizado bajo su poder de vedar partidas para reducir tal sueldo. Nos damos cuenta que el caso de *León* trataba de un funcionario público, y no de un empleado. Pero el razonamiento de la Corte de Circuito sobre este punto es suficientemente amplio para cubrir a los empleados. Dicha Corte dijo a la pág. 888:

"Al ejercitar el poder de veto se dice generalmente que el ejecutivo ejercita un poder legislativo . . . pero también se dice que el poder es solamente negativo, y no positivo. . . Éste es un poder para impedir condicionalmente, y en Puerto Rico con respecto a proyectos de asignaciones, para modificar, los proyectos aprobados por la Legislatura pero que todavía no se han convertido en ley. No es la facultad para aprobar nueva legislación o derogar o modificar la antigua, y es un poder que debe ejercitarse, si es que se ejercita, dentro de un período limitado. Es una facultad sólo para restringir o impedir la acción legislativa antes de que tal acción se convierta en ley. . . .

"Nos parece que si sancionáramos la actuación del Gobernador en este caso estaríamos en conflicto con estos principios, ya que permitiríamos al Gobernador como cuestión práctica, enmendar, sin limitación en cuanto a tiempo y por sí mismo, una ley, aquí la núm. 40 de 1929, que era ley hacía tiempo. Según la analizamos, de permitirse su actuación 'no sería el rechazo de una partida o partidas de asignaciones por veto sino, en efecto, legislación afirmativa por mandato ejecutivo' (*Bengzon* v. *Secretary of Justice,* 299 U. S. 410,

414, 57 S.Ct. 252, 254, 81 L. Ed. 312) y en su consecuencia patentemente en conflicto con los principios constitucionales básicos. . . .''

■ Pasemos a los hechos de este caso. Si los haberes de las peticionarias se hubieran fijado por la Ley núm. 212, la Legislatura, como hemos visto, podía sin embargo reducir válidamente estos sueldos en la Ley General de Presupuesto. Pero esto último no fué lo que ocurrió. Por el contrario, la Legislatura asignó la misma cantidad para estos emolumentos en la Ley General de Presupuesto de 1946–47. Y según el razonamiento del caso de *León* cuando la Legislatura fija los sueldos de empleados en una ley especial y luego asigna la misma cantidad para tales sueldos en la Ley General de Presupuesto, la intención legislativa para mantener dichos emolumentos al tipo fijado en la ley especial no puede ser frustrada por el Gobernador, usando su poder de vedar partidas, para reducir tales sueldos en la Ley General de Presupuesto.

Vemos pues que la cuestión primordial a determinar aquí es si los emolumentos de las peticionarias fueron fijados en la Ley número 212. Éstas alegan que sus haberes fueron fijados por dicha Ley en $2,100, en la teoría de que la Legislatura describió la plaza como oficinista taquígrafo director, que conlleva en el Servicio Clasificado un sueldo anual no menor de $2,100. Este argumento tiene algunas fallas: (1) estos cargos no están dentro del Servicio Civil Clasificado; (2) el Presupuesto General de 1946–47 incluye estas plazas como No Clasificadas; y (3) la misma Ley General de Presupuesto parece que no considera que una plaza que se describe como oficinista taquígrafo director, pero que está fuera del Servicio Civil Clasificado, conlleve automáticamente un haber de $2,100, ya que a la página 1561 asigna a los Jueces del Tribunal Supremo cinco taquígrafos con exactamente la misma categoría con $1,800 en vez de $2,100 anuales.

Pero, independientemente de estas consideraciones, hay una dificultad aún más seria en la posición de las peticiona-

rias. La sección 15 fija estos sueldos en $2,100 solamente hasta julio 1, 1946. Entonces provee que después de dicha fecha los sueldos para dichas plazas serán aquéllos que se consignen en las siguientes Leyes Generales de Presupuesto. Por tanto la Legislatura no fijó estos emolumentos en la Ley núm. 212, sino que dispuso que, a partir de julio 1, 1946, dichos haberes serían fijados en la Ley General de Presupuesto. En su consecuencia, la Legislatura por los términos de la Ley núm. 212 dejó intacto el poder del Gobernador para reducir estos sueldos, cuando fueran luego consignados por la Legislatura en la Ley General de Presupuesto, de acuerdo con su poder de vedar partidas ejercitado a tenor con el párrafo 1 de la sección 34 del Acta Orgánica. Al así actuar el Gobernador no estaba derogando o modificando legislación antigua según ésta aparecía de la Ley núm. 212. Estaba restringiendo actuaciones legislativas, halladas en la propuesta Ley General de Presupuesto, antes de que ésta se convirtiera en ley.

*La sentencia de la corte de distrito será revocada y se dictará nueva sentencia declarando sin lugar la petición de mandamus.*