No. 30,243.

THE STATE OF KANSAS, ex rel. ROLAND BOYNTON, as Attorney-general, etc., *Plaintiff*, v. WILL J. FRENCH, as Auditor, etc., *Defendant*.

(300 Pac. 1082.)

Opinion filed July 3, 1931.

*Roland Boynton*, attorney-general, and *John G. Egan*, assistant attorney-general, for the plaintiff.

*Walter T. Griffin* and *Morris Garvin*, both of Topeka, for the defendant.

The opinion of the court was delivered by

HARVEY, J.: This is an original proceeding in mandamus to require the state auditor to audit a voucher in favor of C. S. Loper and draw his warrant therefor upon the state treasurer in payment for services rendered the state under the direction of the attorney-general in the case of the *State of Colorado v. The State of Kansas and the Finney County Water Users Association,* pending in the supreme court of the United States. The question raised is whether there is an appropriation from which the claim can be paid, and that depends upon whether an attempted veto by the governor of certain items of an appropriation bill is effective.

The legislature of 1931 (Laws 1931, ch. 8), in making appropriations for the attorney-general's department, included this item:

"For the purpose of defraying the expenses of contesting the suit of the *State of Colorado v. The State of Kansas and the Finney County Water Users Association* (unexpended balance at the end of the fiscal year, June 30, 1931,

reappropriated for the fiscal year of 1932 and any unexpended balance at the end of the fiscal year 1932 is hereby reappropriated for the fiscal year of 1933), for 1931, $5,000; for 1932, $5,000."

The bill carrying this item regularly passed both houses of the legislature and was duly presented to the governor. In due time the governor signed the bill and returned it to the house of representatives with this notation:

"EXECUTIVE DEPARTMENT, March 16, 1931.

*"To the House of Representatives:*

"I am returning herewith house bill No. 663 signed, but with objections to the following items:

"The two items of $5,000 each for 1932 and 1933 for paying the expenses of contesting the suit of the *State of Colorado v. State of Kansas and the Finney County Water Users' Association;*

"The item of $900 to the state architect for the year 1931 for mechanical and drafting engineer.          HARRY H. WOODRING, *Governor."*

The question for our determination is whether this is an effective veto of the items referred to. Our constitutional provision (art. 2, § 14) relating to the governor's veto of a bill, or of separate items of an appropriation bill, reads as follows:

"Every bill and joint resolution passed by the house of representatives and senate shall, within two days thereafter, be signed by the presiding officers, and presented to the governor; if he approve, he shall sign it; but if not, he shall return it to the house of representatives, which shall enter the objections at large upon its journal and proceed to reconsider the same. If, after such reconsideration, two-thirds of the members elected shall agree to pass the bill or resolution, it shall be sent, with the objections, to the senate, by which it shall likewise be reconsidered, and if approved by two-thirds of all the members elected, it shall become a law; but in all such cases the vote shall be taken by yeas and nays, and entered upon the journals of each house. If any bill shall not be returned within three days (Sundays excepted) after it shall have been presented to the governor, it shall become a law in like manner as if he had signed it, unless the legislature, by its adjournment, prevent its return, in which case it shall not become a law. If any bill presented to the governor contains several items of appropriation of money, he may object to one or more of such items, while approving the other portion of the bill; in such case he shall append to the bill, at the time of signing it, a statement of the item or items to which he objects, and the reasons therefor, and shall transmit such statement, or a copy thereof, to the house of representatives, and any appropriations so objected to shall not take effect unless reconsidered and approved by two-thirds of the members elected to each house, and, if so reconsidered and approved, shall take effect and become a part of the bill, in which case the presiding officers of each house shall certify on such bill such fact of reconsideration and approval."

We are not concerned in this case with what is necessary to be done by the governor in order to veto a bill, for the objections of the governor here under consideration did not go to the bill as a whole. He signed the bill. It carried many items of appropriation. He made objections to but three of them. We are concerned here with that part of the constitution which pertains to a bill presented to the governor which contains several items of appropriation of money. The provision with respect to that is:

". . . he may object to one or more of such items, while approving the other portion of the bill; in such case he shall append to the bill, at the time of signing it, a statement of the item or items to which he objects, *and the reasons therefor* (italics ours) and shall transmit such statement, or a copy thereof, to the house of representatives, . . ."

It is obvious the governor did not fully comply with the constitutional provision. He stated that he objected to certain items, but he did not state *the reasons therefor*. Is it essential to an effective veto of an item in an appropriation bill that the governor state his reasons for his objection? It should be a sufficient answer to this question to say that our constitution specifically requires that the reasons for the objection be stated. Such has been the uniform practice in this state as shown by our legislative journals. Our federal constitution (art. 1, § 7) contains a provision with respect to vetoing a bill similar to that in our constitution, and it has been the uniform practice of the presidents, in vetoing an act of congress, to state reasons for the veto. (See "Messages and Papers of the Presidents.") There is a reason for this constitutional requirement. The reasons stated by the executive for his veto of a bill, or specific items, must be spread upon the journal, and they form the basis of further consideration of the bill or items for the purpose of determining whether, notwithstanding the objections and reasons therefor given by the executive, the legislature should enact the measure or approve the items by the necessary two-thirds vote. (See 1 Tucker on United States Constitution, § 213.)

In "Veto Power" by Mason, a Harvard historical monograph, tracing the development and operation of the veto power in the government of the United States in 1889, the use of the veto power in England and in the American colonies is discussed. It is pointed out that what was regarded in this country as the abuse of the veto power by the crown was so universally felt that the first clause in the Declaration of Independence set forth as a reason for the sepa-

ration of the colonies from the mother country, "He [the King] has refused to assent to laws most wholesome and necessary for the public good." The exercise of the veto power by the colonial governors was even more objectionable than that of the crown. As a result of this feeling in the state governments which were formed after the breaking out of hostilities with England the veto power was greatly limited. In several states a commission took the place of a governor. In no state but Massachusetts did the governor have even a qualified veto on acts of the legislature, and that authority was not given until 1780 (§§ 7 and 8), and in Appendix E it is noted that (in 1890) in four states—Rhode Island, Ohio, Delaware, North Carolina—there is no provision for the revision of a bill by the governor. In each of the other states the constitution gave to the governor veto power, but in only one of them—Georgia—could the governor withhold his signature without stating reasons. In discussing the federal constitution it is said (§ 102):

"May a bill be vetoed without stating reasons? All of the presidential vetoes have been accompanied by the reasons for the refusal to sign. Indeed it is difficult to see how any other plan could be followed, since the constitution requires that if the president fails to approve a bill he shall return it, with his objections, to that house in which it shall have originated. Furthermore, it is maintained in a pamphlet by Mr. J. H. Benton, Jr., that the objections assigned must be objections to the intrinsic merits of the bill. He quotes at length from the proceedings of the federal convention, from the *Federalist*, and from the writings of Madison and Hamilton, to show that the president's authority was similar to that of the council of revision in the state of New York, and that this council had power to state objections only to the intrinsic merits of the bills brought before it. This restriction would narrow the plain wording of the constitution by an appeal to the practice of a body unknown to the constitution, and equally unknown to English parliamentary practice. The constitution sets no limit upon the nature of the objections stated by the president, nor is it generally assumed that there are any limits. If there be none, the president has a constitutional right to veto a bill simply because undue influence had been used in securing its passage, or for any other reason that seems good to him, even though his objections may have no reference to the contents of the measure."

In *Fulmore v. Lane,* 104 Tex. 499, 140 S. W. 405, it was said:

"The duty of defining the power of the executive in relation to the exercise of the veto privilege is, as suggested by Chief Justice Woods in the case of *State v. Holder,* 76 Miss. 177, 23 So. 643, one of difficulty and delicacy. The veto power of the executive under our system of government is not inherent in such officer as a legislative function, but is a power confided in him by the supreme authority of the state, and in exercising this function, while he is not

confined to rules of strict construction, he nevertheless must look to the constitution for the authority to exercise such power. The principle here enunciated has been aptly put by the supreme court of Illinois, in the case of *Field v. People,* 3 Ill. 79, in discussing the question of the governor's veto power: 'In deciding this question, recurrence must be had to the constitution. That furnishes the only true rule by which the court can be governed. That is the charter of the governor's authority. All the powers delegated to him or in accordance with that instrument, he is entitled to exercise, and no others.' " (p. 511.)

The veto power is ordinarily regarded as being legislative as distinct from executive. (See 25 R. C. L. 882; 12 C. J. 900, and cases there cited.) In this case we need not be greatly concerned with its classification in that regard. Originally it reposed in the people, as did other governmental powers. In framing a constitution the people can vest it in the governor, or in such other officer or governmental body as they choose, and with such limitations on its use as they deem wise. There have been many decisions, first and last, by the courts of last resort in various states in the use of the veto power by the governor, where, by the constitution, such power was vested in him. Naturally these decisions vary, depending largely upon the wording of the constitutional provision under consideration and the varying phases of the question presented. But underlying them all this basic principle is consistently adhered to, that the constitution is the governor's guide. It measures the extent and limits of his power and authority. So, when the question arises whether the acts of the governor constitute an effective veto of a bill, or of separate items or provisions in a bill, the simple question arises: What does the constitution authorize or permit him to do? And, second, does his act conform thereto? (See *Weis v. Ashley,* 59 Neb. 494, 81 N. W. 318; *Elmen v. State Board of Equalization and Assessment,* 231 N. W. 772 [Neb.] ; *Pickle v. McCall,* 86 Tex. 212, 24 S. W. 265; *State v. Holder,* 76 Miss. 158, 23 So. 643; *Strong v. People, ex rel.,* 74 Colo. 283, 220 Pac. 999; *Fergus v. Russel,* 270 Ill. 304, 110 N. E. 130; *The People v. Brady,* 277 Ill. 124, 115 N. E. 204; *Regents of the State University v. Trapp, Auditor,* 28 Okla. 83, 113 Pac. 910; *Peebly v. Childers,* 95 Okla. 40, 217 Pac. 1049; *Porter v. Hughes,* 4 Ariz. 1, 32 Pac. 165; *Callaghan v. Boyce,* 17 Ariz. 433, 153 Pac. 773; *Fairfield v. Foster,* 25 Ariz. 146, 214 Pac. 319; *Black & White T. Co. v. Standard Oil Co.,* 25 Ariz. 381, 218 Pac. 139; *Texas Co. v. State,* 31 Ariz. 485, 254 Pac. 1060; *Woodall v. Darst,* 71 W. Va. 350, 77 S. E. 264; *Hartness v. Black,* 95 Vt. 190, 114 Atl. 44; *Erskine v.*

*Pyle*, 51 S. D. 262, 213 N. W. 500; *State, ex rel. Jamison, v. Forsyth,* 21 Wyo. 359, 113 Pac. 521; *Lukens v. Nye*, 156 Cal. 498, 105 Pac. 593; *Mills v. Porter et al.* [*Veto Case*], 69 Mont. 325, 22 Pac. 325; *Dickinson, Auditor, v. Page*, 120 Ark. 377, 179 S. W. 1004; *Wheeler v. Gallet*, 43 Ida. 175, 249 Pac. 1067; *Cammack, Attorney-general, v. Harris*, 234 Ky. 846, 29 S. W. [2] 567; *State v. Grant Superior Court*, 172 N. E. 897 [Ind.].)

This list is not intended to be complete. Our own cases, in so far as they touch the question at all, are to the same effect. (*State v. Whisner*, 35 Kan. 271, 10 Pac. 852; *State v. Sessions*, 84 Kan. 856, 115 Pac. 641; *State, ex rel., v. City of Salina*, 108 Kan. 271, 194 Pac. 931; *State, ex rel., v. Ryan*, 123 Kan. 767, 256 Pac. 811. See, also, *The Pocket Veto Case*, 279 U. S. 655.)

Defendant argues that the item here in question cannot be regarded as having received the approval of the governor. The point is not well taken. The governor signed the bill, which act, in and of itself, registers his constitutional approval of all the items unless he registers his disapproval of one or more of the items in the manner provided in the constitution. This he did not do. Under the plain wording of the constitution his objection to the items, with his reasons therefor, constitute an effective veto of such items. Nothing less than that will accomplish the purpose. A similar question arose in West Virginia, under a constitutional provision quite like ours. It was there said (*May v. Topping*, 65 W. Va. 656, 64 S. E. 848):

"The communication of his disapproval, with his reasons therefor, is the disapproval itself. The obligation upon the governor to communicate his disapproval of an item, with his reasons therefor, to the house in which the bill originated, is a mandatory one to bring about the qualified veto that is given him in such instances. Unless he communicate as directed by this constitutional provision he approves and does not disapprove. The last clause of the section clearly discloses such interpretation. It says: 'Any item or items so disapproved shall be void, unless repassed by a majority of each house.' What do the words 'so disapproved' mean? The use of these words makes one to inquire: How disapproved? Clearly they relate not simply to disapproval in the mind of the governor, but to some act of disapproval, some manner of disapproval. That act or manner of disapproval, provided for just above these words, and to which 'so disapproved' clearly relates, is by communication with reasons to the house in which the bill originated. 'Any item or items so disapproved shall be void, unless repassed.' The very connection between the words 'so disapproved' and 'unless repassed' shows that the constitution intends that the disapproval of the governor, to be a dis-

approval at all, must be communicated to the house of the legislature in which the bill originated, so that the legislature may again act upon the item; so that it may repass it, if the governor's reasons for disapproval do not persuade it to do otherwise, by a majority of each house according to the rules and limitations prescribed. Only by being 'so disapproved' is the item declared void by the constitution. Disapproval in any other form or manner does not affect it." (p. 659.)

Generally it is held that when the governor does some act tending to indicate his disapproval of a bill or an item or provision therein, but does not do so in conformity with the requirements of the constitution, his act is ineffectual, and in some cases is spoken of as a nullity. (See cases above cited, particularly *State v. Holder,* supra; *Regents of the State University v. Trapp, Auditor,* supra; *Callaghan v. Boyce,* supra; *State, ex rel. Jamison, v. Forsyth,* supra.)

The result is that the attempted disapproval of certain items of the bill in question was ineffectual to constitute a veto of those items under our constitution, and the bill as a whole, as presented to the governor and as signed by him, became a law.

The bill in question made $5,000 of the appropriation available for the fiscal year 1931, the unexpended balance to be reappropriated for 1932. The governor's attempted disapproval did not mention the portion of the appropriation available for 1931, hence, if we examine the matter critically, the voucher here in question should be audited in any event. But we do not care to base our decision upon that; we prefer to base it upon the broader question as above considered. The result is, judgment must be entered for plaintiff. The writ prayed for should issue.

It is so ordered.