# Arnett, Secretary of State, v. Meredith, Atty. Gen.

(Decided Nov. 4, 1938.)

S. H. BROWN for appellant.

HUBERT MEREDITH, Attorney General, in pro. per., and JESSE K. LEWIS, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

At its regular 1938 session the General Assembly of this Commonwealth passed an act, chapter 275, amending and re-enacting section 551 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, which is a part of the chapter dealing with corporations. It was House Bill No. 189 and Senate Bill No. 44. After its final passage by both houses it was sent to the Governor for his approval or disapproval, but he did not attempt to act upon it until after the session of the Legislature had adjourned sine die. Before the time expired within which he might exercise his right of veto, or of express approval, he wrote on the bill as delivered to him, and subscribed his name officially thereto, these words: "This bill is hereby vetoed, this March 11, 1938."

Section 2438 of the same statutes imposes certain duties on the Attorney General of the Commonwealth

with reference to printing of the acts passed by the General Assembly, and appellee and plaintiff below as such officer, conceiving that the Governor had not legally exercised his right of veto of the involved act, demanded of the Secretary of State a copy thereof to be published by plaintiff in discharge of his duties imposed by the statute. The request was refused, followed by this declaratory judgment action filed by plaintiff in the Franklin circuit court against appellant and defendant below, Charles D. Arnett, the present Secretary of State for the Commonwealth of Kentucky.

The petition set out all the facts necessary to raise the only question involved in the case, which is: Whether or not the inserted and subscribed statement made upon the act by the Governor complies with his authority as defined by and set forth in section 88 of our Constitution? The prayer of the petition says: "Wherefore, plaintiff asks this Court for a declaratory judgment directing said Charles D. Arnett, Secretary of State, to furnish the public printer a copy of said bill for the purpose of having same printed as a law of this Commonwealth and he prays for all proper relief in the premises." The learned trial judge of the Franklin circuit court sustained the prayer of the petition and adjudged: "That the attempted veto by the Governor of Kentucky of House Bill No. 189 and copied in full in the petition herein was ineffective and illegal for the reason that his attempted veto thereof was not accompanied by a veto message as required by Section 88 of the Constitution of Kentucky." From that judgment defendant prosecutes this appeal.

Section 88 of our Constitution, in conferring power and authority on the Governor to approve or disapprove acts passed by the General Assembly, says: "Every bill which shall have passed the two houses shall be presented to the governor. If he approve, he shall sign it; but if not, he shall return it, with his objections, to the house in which it originated, which shall enter the objections in full upon its journal, and proceed to reconsider it. If, after such reconsideration, a majority of all the members elected to that house shall agree to pass the bill, it shall be sent, with the objections, to the other house, by which it shall likewise be considered and if approved by a majority of all members elected to that house, it shall be a law; but in such case the votes

of both houses shall be determined by yeas and nays, and the names of the members voting for and against the bill shall be entered upon the journal of each house respectively. If any bill shall not be returned by the governor within ten days (Sundays excepted) after it shall have been presented to him, it shall be a law in like manner as if he had signed it, unless the general assembly, by their adjournment, prevent its return, in which case it shall be a law, unless disapproved by him within ten days after the adjournment, in which case his veto message shall be spread upon the register kept by the secretary of state. The governor shall have power to disapprove any part or parts of appropriation bills embracing distinct items, and the part or parts disapproved shall not become a law unless reconsidered and passed, as in case of a bill.''

Section 27 of the same Constitution divides the powers of government of this Commonwealth into three distinct departments—the legislative, the executive and the judicial, and section 28 says: ''No person, or collection of persons, being of one of those departments, shall exercise any power properly belonging to either of the others, except in the instances hereinafter expressly directed or permitted.'' In the case of Sibert v. Garrett, 197 Ky. 17, 246 S. W. 455, we designated such divisional structure as the ''American Tripod form of Government,'' since the Federal Constitution and those of every state in the Union prescribe therefor in terms substantially the same as expressed by section 27 of our Constitution. Likewise a majority of State Constitutions also contain the negative terms found in our inserted section 28, supra.

All American courts before which the question has been submitted for determination—as well as all text writers on the subject—unanimously hold that the exercise by the Governor of the veto power conferred upon him by the local Constitution is a legislative act and involves an encroachment by the executive department upon the functions of the legislative department, and which is one of the excepted ''instances hereinafter expressly directed or permitted,'' as contained in section 28, supra, of our Constitution.

An example of the universal statement of text writers substantiating the above statement is found in 59

C. J. 575, section 101, saying: "Under the system of government adopted in this country the chief executive, either the president or a governor, is a part of the law-making power; and while engaged in considering bills which have been passed by the legislature and which are presented to him for approval or disapproval, the governor is acting in a legislative capacity, or is exercising a power which is essentially legislative in character, and is not acting in an executive capacity." Numerous cases from different courts are cited on page 576 of that volume—in notes 94 and 95 thereto—in support of that statement, among which is the case of Cammack v. Harris, 234 Ky. 846, 29 S. W. (2d) 567. The reader may readily locate those cases by consulting the reference page without our incumbering the opinion with their recitation. However, it truthfully may be said that there is no dissent with the courts or text writers on the correctness of the proposition, i. e., that the exercise of the right of veto, wherever it is conferred by the local Constitution, involves the performance of legislative functions instead of executive functions. Perhaps no principle embodied in our Constitution (and also in those of other states) is more emphatically cherished and guarded than that of the division of the government provided by the Constitution into the three separate branches, supra; and, therefore courts unanimously announce the rule to be that all provisions for such permitted encroachments by one department in the exercise of functions properly belonging to another, that may be found in the Constitution, are not only mandatory, but should be strictly construed.

The text in volume 1 of Cooley's Constitutional Limitations, 8th Edition, beginning on page 320 substantiates what we have thus far said with reference to the nature and character of the veto power conferred upon the Governor, and on page 324 of the same volume the learned author says: "A constitutional provision requiring the governor, if he desires to effect the veto of a bill, to file the bill, with his objections thereto, in the office of the Secretary of State, within a prescribed period after the adjournment of the legislature, is mandatory, in respect to both the time and the manner of exercising the power."

The West Virginia case of Capito v. Topping, 65 W. Va. 587, 64 S. E. 845, 22 L. R. A., N. S., 1089, is cited

in support of that text. That opinion is a learned one and we commend it to all those interested in the questions discussed. The question involved in that case substantially parallels the one involved in the instant one, and in speaking of the rule that should be followed by courts in interpreting such constitutional provisions as is here involved the West Virginia court said [page 847]: "So they [such constitutional provisions] necessarily stand on a much higher plane than mere statutes, and the courts as a rule do not feel warranted in upholding deviations from them in respect to the manner and time of the performances of acts prescribed or required by them. Wolfe v. McCaull [supra], 76 Va. 876; Cooley, Const. Lim. (7th Ed.) 114, 219; Lewis' Suth. Stat. Con., sec. 164, p. 109.''

All other authorities are to the same effect and we have found none to the contrary, nor has any been cited to us in briefs of counsel. The West Virginia opinion then continues: "Tested by its terms, the clause under consideration [the one conferring the veto power] may be said to be in mandatory form, though form is not always conclusive. * * * If the Governor desires to veto a bill after the adjournment of the Legislature, it must be filed, *with his objections,* 'in the office of the Secretary of State within five days after such adjournment, or become a law.' * * * Unlike many other provisions [the section of the constitution conferring veto power on the governor], it does not stop with the prescription of the affirmative act, leaving the consequence of failure to inference. It declares the sequence.'' (Our italics.)

The opinion then indulges in other comment, and finally approves the above expressed rules for the interpretation of such constitutional provisions, i. e., that they (veto power provisions) confer exclusively legislative functions upon the Governor, and that the sections of the Constitution so conferring the power upon the chief executive are mandatory and should be strictly construed.

The reason for the enunciation of such rules is given by the supreme court of the State of Kansas in the case of State ex rel. Boynton v. French, 133 Kan. 579, 300, P. 1082, which also holds (as do all other courts) that the veto power is not inherent in the Governor as a legislative function. The "reason" above

referred to is given by that court in reciting a part of the history of the veto power by the chief executive of the sovereignty over which he presides as it existed at the time of the formation of the states composing our Federal Union and before they adopted their respective Constitutions, and also the scrupulous care with which provisions with reference to the veto power of their respective chief executive was guarded. As so recited in that opinion it is [page 1083]:

"In Veto Power, by Mason a Harvard historical monograph, tracing the development and operation of the veto power in the government of the United States to 1889, the use of the veto power in England and in the American Colonies is discussed. It is pointed out that what was regarded in this country as the abuse of the veto power by the Crown was so universally felt that the first clause in the Declaration of Independence set forth as a reason for the separation of the Colonies from the mother country: 'He (the King) has refused to assent to laws most wholesome and necessary for the public good.' The exercise of the veto power by the Colonial Governors was even more objectionable than that of the Crown. As a result of this feeling in the state governments which were formed after the breaking out of hostilities with England the veto power was greatly limited. In several states a commission took the place of a Governor. In no state but Massachusetts did the Governor have even a qualified veto on acts of the Legislature, and that authority was not given until 1780 (sections 7 and 8) and in appendix E it is noted that (in 1890) in four states—Rhode Island, Ohio, Delaware, North Carolina—there is no provision for the revision of a bill by the Governor.

"In each of the other states the Constitution gave to the Governor veto power, but in only one of them—Georgia—could the Governor withhold his signature without stating reasons. In discussing the federal Constitution it is said (section 102): 'May a bill be vetoed without stating reasons?—All of the presidential vetoes have been accompanied by the reasons for the refusal to sign. Indeed it is difficult to see how any other plan could be followed, since the Constitution requires that if the President fails to approve a bill he shall return it, with his objections, to that House in which it shall have originated.' * * * Generally it is held that, when the

Governor does some act tending to indicate his disapproval of a bill or an item or provision therein, but does not do so in conformity with the requirements of the Constitution, his act is ineffectual, and in some cases is spoken of as a nullity."

On the question of strict construction, and mandatory nature of requirements of such veto provisions found in Constitutions, the text in 59 C. J. supra, 583, section 112, says: "The authority of an executive to set aside an enactment of the legislative department is not an inherent power, and can be exercised only when sanctioned by a constitutional provision and only in the manner and mode prescribed." In the same volume on page 585 the text, in dealing with the isolated subject of "veto message," says: "When the Governor returns a bill to the legislature without his approval, he is generally required to state his reasons for not approving the same; and it has been held that it is immaterial that the objection stated by the executive is based upon a defect in the bill which does not in fact exist." The cases cited in the notes to each excerpt from the text are in complete accord therewith, but the case of Birdsall v. Carrick, 3 Nev. is erroneously cited as being on page 138 of that volume, whilst the correct citation is on page 154.

The text of 6 R. C. L. 55, section 50, says: "Accordingly it is the general rule to regard constitutional provisions as mandatory, and not to leave it to the will of a legislature to obey or disregard them. This presumption as to mandatory quality is usually followed, unless it is unmistakably manifest that the provisions were intended to be directory merely. The analogous rules distinguishing mandatory and directory statutes are of little value in this connection, and are rarely applied in passing upon the provisions of a constitution. So strong is the inclination in favor of giving obligatory force to the terms of the organic law, that it has even been said that neither by the courts nor by any other department of the government may any provision of the constitution be regarded as merely directory, but that each and every one of its provisions should be treated as imperative and mandatory, without reference to the rules distinguishing between directory and mandatory statutes."

The case of State v. Tooker, 15 Mont. 8, 37 P. 840,

25 L. R. A. 560, is cited in support thereof. The writer of that opinion quotes freely from Judge Cooley in his work on Constitutional Limitations, 4th Edition, page 99, in which that learned author says that "It will be found, upon full consideration, to be difficult to treat any constitutional provision as merely directory, and not imperative." 37 Pac. R. 841. Excerpts from other pages of that learned publication are also inserted in the Montana opinion and cases from other courts are also referred to therein as sustaining the conclusions reached by that court, and all of which are in accord with what we have hereinbefore stated. The same court in the later case of Mills v. Porter, 69 Mont. 325, 222 P. 428, 35 A. L. R. 592, adhered to the same principle of constitutional interpretation theretofore approved by it, and in which latter opinion many later cases are cited and referred to. If time and space permitted we would specifically refer to each case dealing with the questions involved here, but those to which reference has been made do refer to them, and we have been unable to find any dissent from the propositions hereinbefore advanced and approved by both text writers and courts.

We will now turn to our constitutional provision relating to the veto power of the Governor of this Commonwealth, which is section 88 of that instrument as hereinbefore inserted. It may be divided into two parts —(a) vetoes by the Governor which are made while the General Assembly is still *in session,* and (b) those made by him *after* the session is adjourned but within the time prescribed for that purpose. Some of the cases which we have cited—and some of those that may be found at the places designated—deal with part (a) of our section 88; while others deal with part (b), which latter is the one involved in this case. The courts all appear to recognize the scrupulousness with which the exercise of the veto power by the Governor is guarded, and which has its foundation in the conditions described in the excerpt we have made from the Kansas court in the case of State ex rel. Boynton v. French, supra. In the light of that history, and in view of the further mandatory effect that should be given to such constitutional provisions, all of the cases as well as all the text writers say that a veto message is not complete unless it contains either the *reasons* for vetoing the particular

act, or (what is the same thing) the *objections* of the Governor to the act. Also, it is equally unanimously held that such requirements, when contained in the Constitution conferring the power, apply alike to the two situations embodied in both parts (a) and (b) supra of our constitutional provisions. As a consequence courts and texts also announce the rule to be that the mere expression of the. fact of disapproval of an act by the Governor—with no reasons or objections accompanying such disapproval, or veto, as grounds therefor—will be ineffectual and amount to no veto at all, and which in turn allows the act to become a law of the land as if no such unaccompanied (with reasons or objections) veto had been made. In discussing constitutional provisions conferring veto power on the chief executive, courts in construing them (and they are all similar to ours) say that the framers of the Constitution intended to prescribe that under situation (a) supra the reasons and objections accompanying the veto of the Governor might be reconsidered by the Legislature and the act passed over his veto, or it might be amended so as to meet his objections. In other words, that after the bill had been disapproved by the Governor and returned back to the Legislature it might reshape the act so as to meet the reasons and objections stated as a basis of the veto; or it might ignore such reasons and pass the act over the veto. The same reason also exists with reference to a veto made under part (b) supra, of our constitutional provisions, whereby a future Legislature might in.the same manner circumvent or override the reasons or objections as given by the executive.

A still further reason might appropriately be assigned for the rule as so declared, and which is—that it was the purpose of the constitutional convention, and the people in adopting the Constitution, to force the Governor to state reasons and objections for his opposing the enactment, so that both the Legislature and the people might know whether or not he was motivated by conscientious convictions in recording his disapproval. When so restrained a chief executive would hesitate to base his veto upon apparently unfounded reasons, but would endeavor to furnish and set forth reasons and grounds of apparent substance for his opposition, although they might eventually turn out to be fallacious. The public generally who are not members of the Legis-

lature, and also the members of the Legislature, have the right to know the reason or reasons why a particular act was disapproved by the Governor so that they may exercise their rights and powers as voters and lawmakers to overcome such objections in the future, if the act is a meritorious one and approved by them. But, whatsoever may be the reason or reasons for the constitutional limitations on the power of the Governor to veto an act, it is sufficient, under the rule, supra, to say that the Constitution has so required, and we—they being mandatory—are not permitted to approve a departure therefrom.

We are therefore constrained to the conclusion that the learned trial judge properly determined the issue in his judgment from which this appeal is prosecuted, and for the reasons stated, it is affirmed; the whole court sitting.