## No. 28000

## In Re Interrogatories of the Colorado Senate of the Fifty-First General Assembly, Senate Resolution No. 5

(578 P.2d 216)

Decided April 10, 1978.           Rehearing denied May 8, 1978.

Banta & Eason, P.C., Richard L. Eason, Stephen G. Everall, Eugene M. Sprague, for Committee on Legal Services.

J. D. MacFarlane, Attorney General, David W. Robbins, Deputy, Edward G. Donovan, Solicitor General, Mary J. Mullarkey, First Assistant, David K. Rees, Assistant, Joel W. Cantrick, Assistant, for the Governor.

*En Banc.*

MR. JUSTICE GROVES delivered the opinion of the Court.

The Second Regular Session of the Fifty-First General Assembly of Colorado convened on January 4, 1978. It continues to be in session at the time of the announcement of this opinion and, it is anticipated, will be in a position to take whatever action it deems appropriate in the light of the views expressed in this opinion.

On January 26, 1978 the Colorado Senate adopted Senate Resolution No. 5. By this resolution it submitted to us six interrogatories, the answers to some of which constitute the subject matter of this opinion. The interrogatories relate to bills which were passed by the First Regular Session of the Fifty-First General Assembly. (This session convened on January 5, 1977 and adjourned *sine die* June 22, 1977.) The bills in question were vetoed by the Governor. The interrogatories inquire as to whether under the

facts the bills became law in spite of the Governor's vetoes.

In its resolution, the Senate directed our attention to S.B. 16, which was introduced on January 4, 1978. The purpose of that bill is to authorize the 1977 Supplement to Colorado Revised Statutes 1973 and to reenact the statutes set forth in such supplement. The laws to be contained in the supplement will be those designated in the "Official Report of the Committee on Legal Services." The resolution sets forth that, in order for the Committee on Legal Services of the General Assembly to designate which laws will be contained in the supplement, it needs our answers to the interrogatories.

We do not address ourselves to Interrogatories 4, 5 and 6, and rather answer only Interrogatories 1, 2 and 3.

## I.

■ Interrogatory 4 relates to S.B. 581, an appropriation bill, which was delivered to the Governor on June 10, 1977. Portions of S.B. 581 were disapproved by the Governor on June 20, 1977. The Senate sustained the partial vetoes on June 21, 1977. There are outstanding issues of fact concerning S.B. 581. One of these issues of fact is whether the portions of this bill to which the Governor made objection were ever returned to the Senate.

We cannot answer Interrogatory 4 in the absence of resolution of these issues of fact. If we were to appoint a master to take evidence and submit findings of fact to us, this session of the General Assembly undoubtedly would adjourn before we could reach an opinion following such submission. Thus, S.B. 16 no longer would be pending. As this court said in *In Re Interrogatories of the House of Representatives,* 62 Colo. 188, 162 P. 1144 (1916):

"It has been the universal rule in this jurisdiction, that in order to secure answers to legislative questions they must be connected with pending legislation . . . ."

We, therefore, do not answer Interrogatory 4.[1]

## II.

■ We decline to answer Interrogatory 5 and Interrogatory 6 for the reason that bills there involved are the subject of our opinion, *In Re Interrogatories of the Governor,* No. 27939, announced simultaneously herewith.

## III.

Paraphrasing and consolidating Interrogatories 1, 2 and 3, they state: "Under the provisions of Section 11 of Article IV of the State Constitution, Did House Bills 1341, 1441, 1500, 1547 and 1586 and Senate Bills

---

[1] Although the issues appear to be different, *Anderson v. Lamm,* No. 27941, is presently pending before us, and was orally argued here on appeal on March 13, 1978. A number of item vetoes of S.B. 581 are subject to challenge there.

306, 309, 389, 417 and 526 (the subject of Interrogatory 1); Senate Bills 411 and 412 (the subject of Interrogatory 2); and Senate Bills 116, 409 and 453 (the subject of Interrogatory 3), become law notwithstanding the Governor's vetoes?"

Each of these bills was delivered to the Governor more than 10 days prior to adjournment of the General Assembly on June 22, 1977. Thereafter, the Governor vetoed each of these bills. Under the facts or by reason of our assumption *arguendo,* the Governor delivered each of these bills, together with his objections to each, to the house of origin more than 10 days following the delivery thereof by the General Assembly to the Governor. Prior to adjournment, one house of the General Assembly sustained the Governor's veto as to each bill, except Senate Bills 306, 309 and 453. The Senate considered the last three mentioned bills prior to adjournment, took no affirmative action to override the vetoes and declared each bill "lost."

The *Colorado Constitution,* Article IV, Section 11 Provides:

"Every bill passed by the general assembly shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law; but if he do not approve, he shall return it, with his objections, to the house in which it originated, which house shall enter the objections at large upon its journal, and proceed to reconsider the bill. If then two-thirds of the members elected agree to pass the same, it shall be sent, together with the objections, to the other house, by which it shall likewise be reconsidered, and if approved by two-thirds of the members elected to that house, it shall become a law, notwithstanding the objections of the governor. In all such cases the vote of each house shall be determined by ayes and noes, to be entered upon the journal. If any bill shall not be returned by the governor within ten days after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the general assembly shall by their adjournment prevent its return, in which case it shall be filed with his objections in the office of the secretary of state, within thirty days after such adjournment, or else become a law."

For reasons similar to those used as the basis for our ruling in *In Re Interrogatories of the Governor,* No. 27939, announced comtemporaneously with this opinion, the Committee on Legal Services argues that, upon the lapse of the 10-day period after each bill was presented to the Governor, the same became law in like manner as if he had signed it, and the action of one or the other of the houses of the General Assembly in sustaining each veto or declaring the vetoed bills lost did not validate the veto. Relying on *Johnson City v. Tennessee Eastern Electric Co.,* 133 Tenn. 632, 182 S.W. 587 (1916), the Committee on Legal Services contends that, by the time the bills were returned to the house of origin, they had become law, the Governor's vetoes were nullities, and nothing the

General Assembly might do thereafter could breathe life back into the vetoes.

We agree with the contrasting view submitted by the Governor. This view is that, by reason of the acts of the General Assembly in considering the Governor's actions and in sustaining the vetoes or declaring the bills "lost," there was compliance with the constitutional provisions relating to the vetoes.

As indicated in *Wright v. United States,* 302 U.S. 583, 58 S.Ct. 395, 82 L.Ed. 439 (1938) and *Edwards v. United States,* 286 U.S. 482, 52 S.Ct. 627, 76 L.Ed. 1239 (1932), the purpose behind the provision requiring the executive to return a vetoed bill to the house of origin is to insure that the legislative branch shall have suitable opportunity to consider the Governor's objections to bills and on such consideration to pass them over his veto provided there are the requisite votes to do so. There is no question in the minds of the majority of the members of this court that the purpose of the 10-day provision in the Colorado Constitution is to insure that the legislative branch has a suitable opportunity to consider the Governor's objections and take appropriate action with respect thereto. It is apparent that the house of the General Assembly which sustained vetoes or declared the bills "lost" had the time, and took the time, to consider the Governor's vetoes. The constitutional purpose was satisfied, and we rule that the bills enumerated in Interrogatories 1, 2 and 3 did not become law.

For possible guidance in the future, we comment as to a matter which has been discussed in this proceeding. It concerns the fact that on June 4, 1977 the General Assembly went into recess until June 22, 1977, and that vetoed bills were returned by the Governor during that recess. One of the principal purposes for the recess was to allow time for the Governor to review bills upon which there had been action by the General Assembly, for the Governor to act upon such bills, and for the General Assembly to act upon any vetoes thereon.

During working hours while the General Assembly was so in recess, the Chief Clerk of the House of Representatives, the Secretary of the Senate and members of their staffs were in attendance at the respective chambers of the House and Senate; and from time to time the Speaker of the House, the Majority Leader of the House, the President of the Senate and the Majority Leader of the Senate were in attendance at the respective chambers of the House and Senate. The briefs of the Committee on Legal Services and of the Attorney General were filed simultaneously. The Committee on Legal Services was apprehensive that it might be argued that the Governor could not return a disapproved bill to the house of origin during this period following temporary adjournment. We agree with the Committee that vetoed bills were properly returnable to the house of origin during this recess and that the 10-day period was running during this time.

To repeat, the bills which were the subject of Interrogatories 1, 2 and 3 did not become law.

MR. JUSTICE ERICKSON concurs in part and dissents in part.

MR. JUSTICE LEE and MR. JUSTICE CARRIGAN dissent.

MR. JUSTICE ERICKSON concurring in part and dissenting in part:

I respectfully concur in part and dissent in part.

I concur in the majority's opinion only to the extent that it holds that the gubernatorial vetoes in this proceeding are valid. The majority, in my view, reaches the correct result on the question of the vetoes' validity, but does so without recognizing the clear mandate of our constitution. Vetoes which failed to comply with the letter of our constitution are upheld solely on the ground that the legislature has somehow ratified the governor's constitutionally infirm vetoes by attempting to override them. The constitution, however, requires only a majority legislative vote in the absence of a valid gubernatorial veto. If the governor fails to comply with the letter of our constitution's veto provisions, the legislative acts become law in the same manner as if the governor has signed them. *Colo. Const.* Art. IV, sec. 11.

The majority's opinion is clearly inconsistent with its opinion in *In Re Interrogatories of the Governor Regarding Bills of the Fifty-First General Assembly,* 195 Colo. 198, 578 P.2d 200. The majority in that companion decision refused to be persuaded by a substantial compliance argument. Nonetheless, such an argument is in effect being accepted in this proceeding. No clear reason for the different result is evident to me. If the legislature attempts to override a gubernatorial veto and fails, the majority concludes that the purpose of the constitutional provisions has been met, notwithstanding the governor's failure to comply with the letter of the constitution. Yet, if the governor fails to follow the letter of the constitution with respect to post-adjournment vetoes, the majority concludes that the purpose of the constitutional provisions has not been met. *In Re Interrogatories of the Governor Regarding Bills of the Fifty-First General Assembly, supra.* I am not convinced that the purpose of the constitutional veto provisions has not been satisfied by the governor's actions.

Clear, unambiguous and mandatory constitutional provisions are not given prospective application by the majority opinion, and a new procedure, not contemplated by our constitution, is approved. If the governor does not veto and return the vetoed bill to the legislature within the constitutional time limitations, the majority opinion holds that the bill does not thereby become law as provided in our constitution, *Colo. Const.* Art. IV,

sec. 11, but does so only if the legislature takes no action on the invalidly vetoed bills. If the legislature considers the bill and attempts to override the governor's veto, but fails, then the majority opinion holds that the governor's constitutionally infirm veto is valid, and the bill, contrary to the constitution, does not become law. The constitution does not establish such an uncertain procedure, but provides that failure of the governor to timely veto and return a bill results in the bill becoming law in the same manner as if the governor had signed it. *Colo. Const.* Art. IV, sec. 11. I believe the better approach, regardless of retroactive application, is to prospectively require strict compliance with the clear terms of our constitution.

The record in this proceeding, as well as that in the companion case involving the governor's interrogatories, establishes that both the executive and legislative branches of government have failed to comply with clear constitutional mandates. I would, therefore, hold that past enactments and vetoes, which were carried out in accordance with heretofore non-controverted legislative and gubernatorial practice, are valid. Prospectively, I would endorse the position that both the governor and the legislature must strictly comply with the letter of the constitution, as interpreted herein, for the reasons set forth in my limited concurrence and dissent in *In Re Interrogatories of the Governor Regarding Bills of the Fifty-First General Assembly,* 195 Colo. 198, 578 P.2d 200.

MR. JUSTICE LEE dissenting:

I respectfully dissent from the majority opinion for the reason that it departs from the rule of mandatory compliance with constitutional veto requirements adopted by this court in *In Re Interrogatories of the Governor,* No. 27939, announced simultaneously with this opinion.