605 P.2d 223

STATE of New Mexico, ex rel. Bob E. WOOD, Bill L. Lee, I. M. Smalley, John B. Irick, John E. Conway and Aubrey L. Dunn, Petitioners,

v.

Bruce KING, Governor, Shirley Hooper, Secretary of State, Jeff Bingaman, Attorney General, and Director, New Mexico Legislative Council Service, Respondents,

and

Theodore R. Montoya, Manny M. Aragon, Tito Chavez, Edmund J. Lang, Ronald Olguin, and Thomas T. Rutherford, Respondents-in-Intervention.

No. 12760.

Supreme Court of New Mexico.

Dec. 31, 1979.

Rehearing Denied Jan. 18, 1980.

Mickey D. Barnett, Portales, E. Douglas Latimer, Charles C. Spann, Albuquerque, for petitioners.

Jeff Bingaman, Atty. Gen., Jill Z. Cooper, Deputy Atty. Gen., Santa Fe, for respondents.

Freedman, Boyd & Daniels, John W. Boyd, Joseph Goldberg, Rodey, Dickason, Sloan, Akin & Robb, William S. Dixon, Albuquerque, Lanny D. Messersmith, Albuquerque, for intervenors.

Coors, Singer & Stratton, P.A., Harold D. Stratton, Albuquerque, for amicus curiae.

## OPINION

PER CURIAM.

A petition for writ of mandamus was filed by certain members of the New Mexico State Senate and other intervenors (petitioners) directed against the Governor, Attorney General, Secretary of State, the Director of the New Mexico Legislative Council and other intervenors (respondents). The petitioners requested the Court to issue an alternative writ of mandamus commanding the respondents to: (a) Treat the attempted veto of Senate Bill No. 63 as a

nullity; (b) Execute and enforce Senate Bill No. 63 as a valid law of New Mexico; (c) Forward Senate Bill No. 63 to each County Clerk of the various counties in New Mexico with instructions to file it as a valid law of New Mexico; and (d) Include Senate Bill No. 63 in the annual bound session laws in the New Mexico Statutes Annotated.

This Court granted an alternative writ and set a date for hearing on whether to make the alternative writ permanent. Excellent and informative briefs were filed by petitioners, respondents and intervenors, and the parties submitted to the Court a stipulation of facts agreed to by them, and in addition, affidavits and exhibits covering facts upon which the parties could not agree.

The stipulation of facts, affidavits and exhibits before this Court reflect the following: Senate Bill No. 63, known as the "Right to Work" bill, was passed by a majority vote of the Senate and House of Representatives of New Mexico. Except for an amendment deleting the "emergency clause" provision, the bill passed in the exact form as originally introduced. The bill was duly enrolled and engrossed.

On February 20, 1979, the ribbon copy of the enrolled and engrossed Senate Bill No. 63, with the attached signature page, together with other "Xerox" copies of the enrolled and engrossed bill, and the blue jacketed copy of the Senate Bill No. 63, were transmitted to the Governor's office to be presented to the Governor for his approval or veto. The blue jacketed copy of all bills, including Senate Bill No. 63, contains the bill as originally submitted, plus any amendments to the bill and any committee reports indicating any actions taken by committees of the Senate or the House with respect to the bill. On the back cover of the blue jacketed copy of the bill is a "docketing" log, on which is noted actions taken by the House or the Senate or any committees thereof with respect to the bill. All notations on the back of the blue jacketed copy are attested to by either the Chief Clerk of the House or the Chief Clerk of the Senate.

On February 20, 1979, the blue jacketed copy of Senate Bill No. 63, the ribbon copy of the enrolled and engrossed version of Senate Bill No. 63 with an attached signature sheet and other "Xerox" copies of the enrolled and engrossed version of Senate Bill No. 63, were received in the Governor's office. On that day, Senate Bill No. 63 was presented to the Governor for his approval or veto. The Governor determined to veto Senate Bill No. 63 and executed a veto message, denominated Senate Executive Message No. 48, to that effect.

On February 20, 1979, a messenger from the Governor's office returned to the Senate the original and ten copies of Senate Executive Message No. 48, together with the blue jacketed copy of Senate Bill No. 63. A deputy Chief Clerk of the Senate received the Executive Message and Senate Bill No. 63 and executed a receipt for the same, indicating that "the original and ten (10) copies of Senate Executive Message No. 48 and Senate Bill No. 63 in blue folder" were received from the Governor's office. Also, at that time, a copy of the enrolled and engrossed bill was returned to the Chief Clerk's office in the Senate.

On February 20, 1979, the ribbon copy of the enrolled and engrossed version of Senate Bill. No. 63, which had the signature page attached to it, together with two "Xerox" copies of the enrolled and engrossed version of Senate Bill No. 63 and a copy of Senate Executive Message No. 48, were delivered by a messenger from the Governor's office to the office of the Secretary of State of New Mexico. On February 21, 1979, Senate Executive Message No. 48 was entered into the Official Journal of the Senate. No motion to override the Governor's veto was made in the Senate at any time.

The issue presented is whether the Governor's veto of Senate Bill No. 63 was void and a nullity by reason of N.M.Const., Art. IV, § 22, for failure of the Governor to return to the Senate within the required three-day period the copy of the *enrolled and engrossed bill*, along with his veto message.

The parties admit that the enrolled and engrossed bill was not returned to the Senate within the required three-day period. The parties also admit, however, that within the required three-day period there was delivered to the Senate from the Governor's office the original and ten copies of Senate Executive Message No. 48 (veto message) and the original blue jacketed copy of Senate Bill No. 63.

N.M.Const., Art. IV, § 22 provides, insofar as applicable:

Sec. 22. [*Governor's approval or veto of bills.*]

Every bill passed by the legislature shall, before it becomes a law, be presented to the governor for approval. If he approves, he shall sign it, and deposit it with the secretary of state; otherwise, he shall return it to the house in which it originated, with his objections, which shall be entered at large upon the journal; and such bill shall not become a law unless thereafter approved by two-thirds of the members present and voting in each house by yea and nay vote entered upon its journal. Any bill not returned by the governor within three days, Sundays excepted, *after being presented to* him, shall become a law, whether signed by him or not, unless the legislature by adjournment prevent such return.

■ The words "enrolled and engrossed" do not appear in the above constitutional provision; only the words "the bill" appear. If the Legislature, in presenting the constitutional provision for ratification, had intended to use the words "enrolled and engrossed," it could easily have done so. If the words "enrolled and engrossed" had been incorporated in the language of Art. IV, § 22, then that language would have been exclusive and no other "bill" could have been effectively returned to the chamber of origin after veto. We are of the opinion that the words "the bill" or "it" (when referring to the bill) includes the original blue jacketed copy of the bill.

■ Since the word "bill," used in Art. IV, § 22 is not defined elsewhere in the New Mexico Constitution, resort to the nor-

mal rules of statutory construction is appropriate. *Keller v. City of Albuquerque*, 85 N.M. 134, 509 P.2d 1329 (1973); *Postal Finance Co. v. Sisneros*, 84 N.M. 724, 507 P.2d 785 (1973). These rules require that statutes be construed to achieve the purpose for which they are enacted. *Tijerina v. Bolser*, 78 N.M. 770, 438 P.2d 515 (1968).

Although this Court has not previously defined the purpose of the veto provisions of Art. IV, § 22, the United States Supreme Court has defined the purpose of Art. I, § 7, paragraph 2 of the United States Constitution, which, similar to Art. IV, § 22, provides that if the President does not return a bill with his objections to the house in which it originated within ten days, it shall become law. In *Wright v. United States*, 302 U.S. 583, 58 S.Ct. 395, 82 L.Ed. 439 (1938), it was alleged that a veto returned to the Secretary of the Senate while the Senate was temporarily recessed did not satisfy constitutional requirements. In language which we adopt, the Court said:

The constitutional provisions have two fundamental purposes; (1) that the President shall have suitable opportunity to consider the bills presented to him, and (2) that the Congress shall have suitable opportunity to consider his objections to bills and on such consideration to pass them over his veto provided there are the requisite votes. . . . We should not adopt a construction which would frustrate either of these purposes.

302 U.S. at 596, 58 S.Ct. at 400.

*See also Prevost v. Morgenthau*, 70 App. D.C. 306, 106 F.2d 330 (D.C. Cir. 1939).

In construing Art. IV, § 11 of the Colorado Constitution, a provision virtually identical to Art. IV, § 22 of the New Mexico Constitution, the Supreme Court of Colorado, in the case of *In Re Interrogatories of the Colorado Senate of the Fifty-first General Assembly, Senate resolution No. 5*, 578 P.2d 216, 218 (Colo.1978), said:

[T]he purpose behind the provision requiring the executive to return a vetoed bill to the house of origin is to insure that the legislative branch shall have suitable

opportunity to consider the Governor's objections to bills and on such consideration to pass them over his veto provided there are the requisite votes to do so.

■■■■ The clear purpose of the veto provisions of Art. IV, § 22, is to give the house in which a bill originated, an opportunity to consider the Governor's veto of the bill and his objections thereto. That purpose neither suggests nor requires that the word "it," as used in the phrase "otherwise he shall return *it* to the house in which it originated" be construed to mean the enrolled and engrossed copy of the bill. The original blue jacketed copy of the bill gives to the House or Senate the notice to which it is entitled so that the Governor's veto may be overridden. The original bill copy in the blue jacket contains all the legislative history of the bill and provides full notice of the substantive matters contained in a bill when it is returned for consideration of a veto. For this purpose, the original copy in the blue jacket is as effective as the enrolled and engrossed copy. When the Governor returned to the Senate the original blue jacketed copy of Senate Bill No. 63, along with his veto message, he met the requirements of N.M.Const., Art. IV, § 22.

■■■■ In arriving at the result we have reached in this opinion, we are not unmindful of the rule that constitutional provisions prescribing the exact or exclusive times or methods for certain acts are mandatory, and must be complied with, otherwise the enactment will be declared void. In the present case, the pertinent reference in the constitutional provisions as to which copy of the bill was to be returned to the Senate after veto was neither exact nor exclusive. To impose the restrictive interpretation upon the constitutional provision as urged by petitioners would frustrate the intent of the original framers of the Constitution.

■■■■ Nor do we mean to imply that there is no significance to an "enrolled and engrossed" copy of a bill. There is. Under the "enrolled bill rule," an enrolled and engrossed copy, properly signed and authenticated, approved by the Governor and deposited with the Secretary of State, is conclusive as to the regularity of its enactment and the courts may not look behind it to the journals to determine whether constitutional requirements have been met. *Thompson v. Saunders*, 52 N.M. 1, 189 P.2d 87 (1948); but see *Dillon v. King*, 87 N.M. 79, 529 P.2d 745 (1974). The significance of the enrolled and engrossed bill attaches to its enactment and approval as a law, not to its veto. *See* N.M.Const., Art. IV, § 20.

The alternative writ of mandamus heretofore granted by this Court is quashed as having been improvidently issued.

IT IS SO ORDERED.

EASLEY, J. (dissenting).