Roy ROMER, in his official capacity as Governor of the State of Colorado, Plaintiff–Appellant,

v.

COLORADO GENERAL ASSEMBLY; and the Committee on Legal Services, Defendants–Appellees.

No. 92SA118.

Supreme Court of Colorado, En Banc.

Nov. 23, 1992.

Davis, Graham & Stubbs, Robert A. Gatter, Jr., L. Richard Freese, Jr., Andrew M. Low, and Office of the Governor of the State of Colo., Cole Finegan and Margaret E. Porfido, Denver, for plaintiff-appellant.

Welborn Dufford Brown & Tooley, P.C., Gregory A. Ruegsegger, Scott J. Miku-

lecky and David W. Furgason, Denver, for defendants-appellees.

Chief Justice ROVIRA delivered the Opinion of the Court.

The Governor of the State of Colorado appeals a trial court ruling that his vetoes of six bills passed during the 1991 regular legislative session were invalid.[1] Article IV, section 11, of the Colorado Constitution provides, in part, that for bills passed within ten days prior to the legislature's adjournment the Governor has thirty days after adjournment to file the bills, with his objections, in the office of the secretary of state or else the bills shall become law. The General Assembly adjourned on May 8, 1991. Thus, the Governor had up to, and including, June 7, 1991 to file the bills, with his objections, in the office of the secretary of state. The Governor wrote the words "disapproved and vetoed" on each of the five bills and adjacent to each vetoed portion of the "long bill."[2] These bills were filed with the secretary of state on June 7, 1991, within the time allowed by the constitution. No additional messages were filed with the secretary of state until after that date.[3]

On June 20, 1991, the Committee on Legal Services of the Colorado General Assembly, through the Office of Legislative Legal Services, informed the General Assembly that the six bills should be considered law. On July 9, 1991, the Governor filed an "Interrogatory Propounded by Governor Roy Romer on House Bills 1028 and 1217, and Senate Bills 131, 159, 178, and 227" which this court declined to answer. Thereafter, the General Assembly indicated it would publish the six bills in a supplementary pamphlet to be issued separately from the hardbound volumes of the 1991 Session Laws. The Committee on Legal Services voted on September 10, 1991, to publish the six bills without any notes indicating that there was a question as to their validity. This suit followed.

The Governor filed a civil action seeking a declaratory judgment that his vetoes of the six bills were valid and that the bills have no force or effect as law. In the trial court, the Governor and the Colorado General Assembly moved for summary judgment. In granting the General Assembly's motion and denying the Governor's motion, the trial court ruled that "Article IV, Section 11, requires more than mere notice of an objection, it demands reasons, so that the legislative branch and the general public can assess the merits of the veto." Thus, it ruled that writing the words "disapproved and vetoed" on the bills without a veto message was insufficient to comply with the constitutional requirements of article IV, section 11. Additionally, it rejected the Governor's argument that his vetoes need only substantially comply with article IV, section 11. This appeal followed, jurisdiction being premised on section 13–4–102, 6A C.R.S. (1987).

1. The six bills are: (1) Senate Bill 178, the "Taxi Regulation" bill, passed on April 30, 1991; (2) Senate Bill 227, the Appropriations "long bill," passed on April 30, 1991; (3) Senate Bill 131, the "Enterprise Zone Expansion" bill, passed on May 6, 1991; (4) Senate Bill 159, the "Special Districts Regulation" bill, passed on May 6, 1991; (5) House Bill 1028, the "Aviation Fuel Tax" bill, passed on May 7, 1991; and (6) House Bill 1217, the "Post Secondary Enrollment Options" bill, passed on May 7, 1991. These six bills will be referred to collectively as "the six bills."

The Aviation Fuel Tax bill was repealed; thus, the issue of the validity of the Governor's veto of the Aviation Fuel Tax Bill is now moot. Additionally, subsequent legislative enactments have rendered the long bill moot. However, because defendants have stated that these bills will be published as law, as the other purportedly vetoed bills, they are included here with the bills actually at issue.

2. Article IV, section 12 of the Colorado Constitution grants the governor a "line item" veto, which the Governor purports to have exercised on the long bill, S.B. 227.

3. Separate letters amplifying the Governor's vetoes were delivered to the secretary of state on June 13, 1991. These were copies of letters explaining the Governor's objections to the chamber in which the bills originated. These letters were received by the respective chambers as follows: House of Representatives respecting H.B. 1028 on June 7, 1991; House of Representatives respecting H.B. 1217 on June 10, 1991; Senate respecting S.B. 131, 159, 178 and 227 on June 10, 1991.

## I

The issue before this court is whether, by writing "disapproved and vetoed" on the six bills, the Governor returned them to the secretary of state "with his objections" as required by article IV, section 11, which provides in pertinent part:

Every bill passed by the general assembly shall, before it becomes a law, be presented to the governor. If he approve, he shall sign it, and thereupon it shall become a law; but if he do not approve, he shall return it, with his objections, to the house in which it originated, which house shall enter the objections at large upon its journal, and proceed to reconsider the bill.... If any bill shall not be returned by the governor within ten days after it shall have been presented to him, the same shall be a law in like manner as if he had signed it, unless the general assembly shall by their adjournment prevent its return, in which case it shall be filed *with his objections* in the office of the secretary of state, within thirty days after such adjournment, or else become a law.

(Emphasis added.) Because the words "disapproved and vetoed" fail to set forth the basis of the Governor's veto, we hold that the Governor's purported vetoes were invalid. This conclusion is mandated by both the plain language of the Colorado Constitution and by this court's prior interpretation of article IV. Thus, we affirm the trial court's ruling.

This court has noted that it is obliged to ascertain and give effect to the intent of the Constitutional Convention and the people who ratified the constitution, and that intent is the primary guideline in construing our constitution. *White v. Anderson*, 155 Colo. 291, 298, 394 P.2d 333, 336 (1964). In determining this intent we must consider the purpose of the constitutional provision at issue—"the object to be accomplished and the mischiefs to be avoided." *Institute for the Educ. of the Mute & Blind v. Henderson*, 18 Colo. 98, 104, 31 P.

714, 717 (1892). In examining the purpose of the similar "return with objections" requirement in the ten-day bill provision[4] of article IV, section 11, we stated in *In re Interrogatories of the Colorado Senate*, 195 Colo. 220, 578 P.2d 216 (1978) (hereinafter *Lamm II*):

[T]he purpose behind the provision requiring the executive to return a vetoed bill to the house of origin is to insure that the legislative branch shall have suitable opportunity to consider the Governor's objections to bills and on such consideration to pass them over his veto provided there are the requisite votes to do so. There is no question in the minds of the majority of the members of this court that the purpose of the 10–day provision in the Colorado Constitution is to insure that the legislative branch has a suitable opportunity to consider the Governor's objections and take appropriate action with respect thereto.

*Lamm II*, 195 Colo. at 224, 578 P.2d at 218–19. *See Wright v. United States*, 302 U.S. 583, 596, 58 S.Ct. 395, 400, 82 L.Ed. 439 (1938) (one of the purposes of similar federal constitutional provision was to enable Congress to consider the President's objections); *State ex rel. Wood v. King*, 93 N.M. 715, 605 P.2d 223, 227 (1979) ("The clear purpose of the [state constitutional] veto provisions ... is to give the house in which a bill originated, an opportunity to consider the Governor's veto of the bill and his objections thereto."). This purpose does not change because the legislature is no longer in session; the filing of objections after adjournment provides the General Assembly with a statement of the governor's reason for disapproving a bill, which it may consider at future legislative sessions, as well as informing the public.

If the General Assembly is to meaningfully evaluate and consider the governor's objections, the objections must inform about the reasons underlying the veto. Requiring the "objections" to convey reasons is consistent with the interpretation of similar constitutional provisions given by other

---

**4.** Ten-day bills are those bills which are presented to the governor while the legislature is in session. To veto a ten-day bill the governor must return the bill to the bill's house of origin with his objections, within ten days after presentation, or else the bill will become law.

courts and commentators.[5] It is axiomatic that to inform as to the basis of the veto, the objections must give the General Assembly, and the people of Colorado, more information than the act of returning the bill itself. Thus, the words "vetoed" or "returned" would be insufficient. Additionally, we note that with respect to ten-day bills, the Colorado Constitution requires that the "objections" be entered upon the journal of the house of origin. If we were to give "objections" a meaning that does not require the communication of reasons, then this requirement of article IV becomes meaningless. *See Colorado State Civil Service Emp. Ass'n v. Love*, 167 Colo. 436, 450, 448 P.2d 624, 630 (1968) (each clause and sentence of a constitution must be presumed to have purpose and use, which may not be ignored); *City & County of Denver v. Holmes*, 156 Colo. 586, 590, 400 P.2d 901, 903 (1965) (court should avoid interpretation leading to an absurd result).

In light of the above, the precise question becomes whether the language "disapproved and vetoed" imparts some information as to the reasons for the Governor's veto, beyond the mere return of the bill itself. We hold that "disapproved" fails to communicate any reason for the veto of the bill. Section 11 states that if the governor "[does] not approve" of a bill, the governor is to return it, with his objections. Thus, the act of vetoing a bill itself manifests the governor's "disapproval" of the bill, and the additional word "disapproved" imparts no information as to the reason for the governor's veto. "Disapproved" is the functional equivalent of merely writing "vetoed" or "returned" on the bill, and as such is not a statement of objections. *See*

*Wolfe v. M'Caull*, 76 Va. 876, 888 (1882) ("I hereby return Senate Bill No. 23, entitled an 'Act to incorporate the Virginia and Carolina Railroad Company' " was held not sufficient under similar constitutional provision); *Casey v. Dadman*, 191 Mass. 370, 77 N.E. 717, 717 (1906) (Mayor's statement "I hereby return without my approval" contained no statement of objections, and was of no effect); *Arnett v. Meredith*, 275 Ky. 223, 121 S.W.2d 36, 40 (1938) ("This bill is hereby vetoed, this March 11, 1938" held insufficient under similar constitutional provision; "a veto message is not complete unless it contains either the *reasons* for vetoing the particular act, or (what is the same thing) the *objections* of the Governor to the act.").

In reaching this conclusion we are mindful of the fact that the governor may veto a bill for any reason he chooses, *State ex rel. Boynton v. French*, 133 Kan. 579, 300 P. 1082, 1084 (1931); 82 C.J.S. *Statutes* § 55 (1953), and this court will not inquire into the governor's justifications for a veto. *Colorado General Assembly v. Lamm*, 704 P.2d 1371, 1385–86 (Colo.1985). *See French*, 300 P. at 1083–84 (quoting E. Mason, *The Veto Power* (1890) (restriction on the President's authority to veto bills limiting the justification to the intrinsic merits of a bill would narrow the plain wording of the Constitution)). As the defendants acknowledged during oral argument, the statements "it's unfair," or "it's against the public interest" would undoubtedly pass constitutional scrutiny as "objections." Unlike "disapproved" these statements convey the reasons for disapproval; the sufficiency, rationality, or validity of which we will not question.[6] "To disallow

5. *See Arnett v. Meredith*, 275 Ky. 223, 121 S.W.2d 36, 40 (1938) (purpose of constitutional provision is "to force the governor to state reasons and objections for his opposing the enactment, so that both the legislature and the people might know whether or not he was motivated by conscientious convictions in recording his disapproval"); *Casey v. Dadman*, 191 Mass. 370, 77 N.E. 717, 717 (1906) (municipal mayor) ("The reason why it is necessary that the objections should be stated is plain. It is that the body passing the order should have an opportunity to weigh and consider the objections and determine whether [the veto] is right or

wrong."); *United States v. Alice Weil*, 29 Ct.Cl. 538, 539 (1894) (on veto president to return bill "with his reasons why it should not become a law—reasons which are not fiats, but which are addressed to the legislative intelligence"). *See also* 1 Watson, *Watson on the Constitution*, 365–66 (1910) (similar federal constitutional provision is for the benefit of the two Houses, and President is not justified in withholding from them his reasons for disapproving a bill).

6. The mistake of attempting to distinguish between constitutionally sufficient information and constitutionally insufficient information is

a veto for the complete absence of reasons is to establish an objective standard—one with which meddlesome courts cannot tamper. To disallow a veto because the Governor's reasons are not 'sufficient' establishes a subjective standard that invites limitless mischief...." *Jones v. Rockefeller,* 172 W.Va. 30, 303 S.E.2d 668, 683 (1983) (Neely, J., dissenting).

The Governor failed to adhere to the constitutional requirement that he file his objections, *i.e.,* some reason for his act of disapproval. Accordingly, the vetoes are invalid, and the judgment of the trial court is affirmed.

exemplified by *Jones v. Rockefeller,* 172 W.Va. 30, 303 S.E.2d 668 (1983). In *Rockefeller,* the West Virginia Supreme Court found an extensive veto message constitutionally insufficient. The court held the vetoes to be invalid because: (1) The introduction to the veto message failed to make reference to a specific account; (2) no reason or explanation for the reduction that was particular to the account at issue was stated; and (3) the statement that the duplication of administrative costs should be eliminated did not particularly indict the account at issue. *Id.* 303 S.E.2d at 679–80. In effect, the court required the governor to justify the veto by showing a particularized and rational relationship between the purpose of the veto and the harm to be redressed. *Id.* at 680–82; *id.* at 684, 685 (Harshbarger, J. concurring).

We prefer the approach of the framers of the United States Constitution who rejected judicial participation in the veto of bills, and who were acutely aware of the separation of powers issues raised by vetoes. *See* 1 M. Farrand, *Records of the Federal Constitutional Convention of 1787* at 97–98, 138–140 (1911); W. Blackstone, Commentaries (1765) *154–55.